## FORD v. FORD ET ALS.

1. A marriage took place in Virginia, in 1797. After a few years cohabitation the husband and wife separated—the husband left the State of Virginia, came to this State, and in 1817 married another woman, who was ignorant of the first marriage, and who had two children by her supposed husband; the first wife, after the separation, had two illegitimate children. In 1837, the husband by deed conveyed all his property, real and personal, to trustees, for the benefit of the second wife and children, reserving to himself an annuity of a thousand dollars a year during his life, and died in 1839. Upon a bill filed by the first wife to set aside this deed, to have dower allotted to her in the real estate, and for her distributive share of the personalty—Held, that the second wife and children were purchasers for a good consideration of the property conveyed by the deed, and that as their equity was at least as good as that of the first wife, a Court of Chancery would not interfere.

2. A marriage may be proved by cohabitation as man and wife, reputation, &c. in all cases except on a trial for bigamy, or in an action of *crim. con.*

APPEAL from the Chancery Court, sitting for Madison county.

This was a bill filed by the plaintiff in error against the defendant in error. The bill sets forth the marriage of the complainant with Hezekiah Ford in Virginia, in 1797—that he abandoned her without cause, having received in her right a considerable property, came to Alabama and entered into a pretended marriage with the defendant, Nancy N. Ford, and died intestate in 1839—that when in bad health and for the purpose of defrauding complainant he made, in June, 1837, a deed of trust conveying all his property of every description to trustees, reserving to himself an annuity of one thousand dollars—at his death the property to go principally to the defendant and her two children, the fruit of the pretended marriage. The bill charges that the deed is testamentary in its character, and was intended to operate in lieu of a will, to defraud complainant. That with the same fraudulent intention and purpose, about sixteen months before his death, he purchased several tracts of land, and caused the title to be made to the defendant and her children, without any consideration therefor

Ford v. Ford et als.

on their part.   The prayer of the bill is that the deed of trust be set aside and cancelled, and that the complainant have her dower allotted her out of the realty, and for her distributive share of the personal estate.

Defendant, Nancy N. Ford, denies all knowledge of the first marriage, but admits that complainant and deceased commenced living together, as man and wife, in Virginia, in 1797; that complainant was unchaste, and that the deceased abandoned her and came to this State, and that afterwards she had illegitimate children, and relies on a statute of Virginia by which adultery is made a forfeiture of dower—says she was legally married to Ford in 1817, without any knowledge that he was married, and supposing him to be a single man—admits the execution of the deed of trust, but denies the fraudulent intent, or that Ford was in declining health—that the deed was made to dispose of his property instead of a will, but not as his will.

The answers of the other defendants are not important.

The evidence shows the want of chastity of complainant, after the separation.   Her marriage with Ford is proved by one witness who was present—by the production of a copy of the bond preparatory to obtaining a license, and by many witnesses, of reputation and cohabitation as man and wife.

The marriage of defendant and Ford is proved to have been legally solemnized in Madison county, in 1817, and that Ford was then represented to be a single man.   A physician proved the health of Ford to be bad in October, 1837—that he knew his situation and anticipated a speedy death.   There was also record evidence of the property received by Ford in right of his wife, the complainant.

The Chancellor decreed dower to the complainant out of the land to which Ford had a legal title, and dismissed the bill as to the residue.

From this decree the complainant appealed, and assigns for error the dismissal of the bill.

McClung, for the plaintiff in error.   The adultery of the complainant is not proved, but if it was, is no bar to dower at common law, and the common law is in force in this State, having never, in this particular, been altered by statute.

He admitted that a man might make a *bona fide* gift of his

property, but it must be a gift "*out and out*,"—that is, he must not reserve an interest in it, to defeat the complainant's right under the statute. [19th Vesey, 64; 2 Vernon, 202, note 3, 277, 612; 2 Story's Eq. 94; 5th Johns. C. 589.] He insisted this was a will in disguise, the form of a deed being given to it to prevent the complainants right of dissent.

PARSONS, contra. The misbehaviour of the wife destroys her right to maintainance, and will prevent her being countenanced in this Court. [2 Atkins, 97; 1 Roper, 271, 282; 1 Story's Eq. 77.]

He insisted that the cases referred to on the custom of London were not analagous, because, under that custom, the wife and children were considered as purchasers. [1 Atkins, 275; 2 ib. 97.]

He insisted that the conveyance by the deed to the second wife and children was not voluntary, but on a good and meritorious consideration, and should be supported. [Chitty on Con. 215.]

That there was no pretence of right in the complainant as the lands purchased after the execution of the deed of trust— that as to them Ford had neither a perfect equity nor a resulting trust.

ORMOND, J.—This bill is filed by the plaintiff in error, insisting that she was lawfully married to Hezekiah Ford, deceased, in Virginia, in 1797, that he abandoned her a few years after, having received in her right a considerable property— that he came to this State, and in 1817 entered into a pretended marriage with the defendant, Nancy N. Ford, and died intestate in 1839—that whilst in bad health, laboring under a fatal chronic disease, and in contemplation of death, to defraud complainant, he conveyed all his property of every description to trustees, for the benefit of his last wife and her two children, reserving to himself an annuity of a thousand dollars a year, during his life, which deed, the bill alledges, was executed in lieu of a will, and to take effect at his death.

It was argued by the defendants in error, that there was no sufficient proof of the first marriage. Upon an indictment for bigamy, and in the action for criminal conversation, the fact of

the former marriage must be proved by the production of the record of the marriage, or by a witness present at the ceremony. In all other cases, cohabitation as man and wife, reputation, the acknowledgment of the parties themselves, their reception as man and wife by their relations, &c. will be sufficient proof of the fact, or at least raise a presumption, that a marriage in fact took place until the contrary is shewn. The proof in this case goes far beyond those presumptions which are usually held proof of a marriage in fact, and leaves no doubt whatever that the parties were legally married, as stated in the bill.

The ground of the claim asserted by the bill is that the deed in favor of the second wife and the fruit of that connection, is a fraud upon the rights of the first wife. Whilst it is admitted that the husband might have made a perfect gift during his life of all his personal property, and thus have prevented his wife from receiving any portion of it under the statute of distributions, it is insisted that such gift must be complete, and that in this case the reservation of a thousand dollars a year during the life of the grantor, shows that the gift was not *bona fide*, but merely intended to defeat the rights of the complainant.

. This is certainly a case of the first impression, at least in this country. The authorities cited in support of the view taken by the counsel for the plaintiff in error, and the cases in 2d Vernon, which arose on the custom of London, and a passage in the work of Mr. Justice Story on Equity, upon the authority of a recent case in the House of Lords, which he states as a curious case, illustrating the extent to which Courts of Equity will go to enforce the specific performance of contracts in cases where a fraudulent evasion is attempted. "If a person covenants or agrees, or in any other manner validly binds himself to give to A. by his will, as much property as he gives to any other child, he may put it out of his power to do so by giving all his property in his lifetime. Or if he binds himself to give to A. as much as he gives to B. by his will, he may in his lifetime give to B. what he pleases, so as by his will he shall give to A. as much as he gives to B. But then the gifts that he makes in his lifetime to B. must be out and out. For if to defraud or defeat the obligation he has thus entered into he gives to B. any property, real or personal, over which he retains any con-

19

trol, or in which he reserves an interest to himself, then, in order to protect the agreement or obligation which he has thus entered into, and to defeat the fraud attempted upon that agreement or obligation, and to prevent his escaping as it were from his own contract, Courts of Equity will treat this gift to B. in the same manner as if it were purely testamentary, and were included in a will. [2 Story's Eq. 94, §786.]

Without at all questioning the authority here cited, we are of opinion that this case is entirely dissimilar. The decision in the case cited by Mr. J. Story, was made on the ground of contract, the performance of which was attempted to be evaded; but the right which a wife has to a portion of her husband's personal estate, after his death, is not in the nature of a contract with the husband. He has by law, during his life, the most absolute and unqualified dominion over it. The only restriction which has been imposed on him in favor of his wife is in its disposition after his death by will. It is difficult then to conceive how a disposition of property made in the lifetime of the husband, and to take effect immediately, could be fraudulent against the wife, as no right whatever vests in the wife until his death. Her title is derived, not from contract, but is vested in her by law and has no existence whatever until his death.

It is not necessary to consider the effect of the cases cited on the custom of London, in which certain dispositions of property were considered in fraud of the custom, nor is it necessary to enter upon the inquiry whether there is not a distinction between the right vested in the widow and children by the custom of London to a part of the personal estate of a *freeman* of the city, not disposed of in his lifetime, and the right under the statute of distribution, because we are of opinion that the second wife and her children are not mere volunteers.

The beneficiaries under the deed sought to be set aside, are those who had the highest possible claim on the deceased— they are the woman whom he induced to unite herself with him under the belief that she was becoming his wife, and the fruit of that connection—to provide for these persons he was under the highest possible moral obligation. The consideration therefore for the deed was at least a good one. Nor would it be possible for a Court of Chancery, in passing on the relative claims

of the first and second wife, to hold the first entirely guiltless of the consequences which have resulted to the second, from her connection with Ford.

Although the evidence does not conclusively point to the plaintiff in error as the guilty cause of the separation, yet her conduct since that event has been such as at least to cast suspicion over her moral character before that time. The equity of the plaintiff in error, abandoned by her husband near forty years since, which has been acquiesced in by her during all that time, could not, in a Court of Equity, in any possible view stand on higher ground than that of the second wife, upon whom no imputation can be cast, and who was ignorant of the rights of the plaintiff in error, if any she had. Conceding then the equities to be equal, under the circumstances of this case, the second wife and her children must be considered purchasers for a good consideration, and as such entitled to hold the property at least against all whose equity is not superior.

In the English Chancery a decree is never made under marriage articles against the heir at law, even when otherwise provided for by the ancestor, unless those asking the aid of the Court are such as the settler was under a moral obligation to provide for, as in the case of a wife and children. [See the cases collected on this head in Atherly on marriage settlements, 131 to 138.] These cases show the extent to which a Court of Chancery will go in upholding *imperfect* settlements in favor of a wife and children, even against so favored a class as heirs at law in England.

The argument that this deed is a will in disguise, is answered by the deed itself—it was an irrevocable disposition of the property conveyed by it, by which the title passed immediately out of the grantor, and vested in the defendants; it was therefore clearly not testamentary in its character. The imputation of fraud is repelled by the view already taken—that the grantor was under a high moral obligation to provide for those to be benefitted by the deed.

It results necessarily from this, that the Chancellor was right in refusing dower to the plaintiff in those lands purchased for the defendants after the execution of the deed, the legal title to which was never in the husband.

The appeal taken in this case, only brings to our notice the

decision of the Chancellor, refusing to set aside the deed and to allot dower in the lands purchased after the execution of the deed. In this there was no error, and his decree is affirmed.