Johnson, Chief Judge.
At the time this deed was made by Clarissa Mayb ugh and her sons, she was a married woman, though desei’ted and abandoned by her husband, whom she supposed dead.
The sons, being the only heirs apparent to their living father’s estate, should he die.intestate, had only a naked possibility, not coupled with any interest, and hence their •conveyance passed no title or intei’est in the laud. But as the deed contained covenants of general warranty, these *159 covenants would, liad the land descended to them, have operated by way of estoppel, to pass their title to their grantee, his heirs or assigns. Hart et al. v. Gregg, 32 Ohio St. 502.
What, then, was the effect of this deed under the special circumstances of the case, upon the right of Mrs. Mayhugh to dower ?
It is too firmly established in Ohio, to admit of discussion, that a married woman, living with her husband, is, at common law, under the disabilities of coverture, and that no agreement of hers, for the conveyance or incumbrance •of her real estate or of her expectant dower in her husband’s, however solemnly entered into, could be enforced by a bill for specific performance, and that she can .only dispose of or incumber it in the mode prescribed by statute. Purcell v. Goshorn, 17 Ohio, 105; Miller v. Hine, 18 Ohio St. 565; Todd v. Pittsburgh R. R. 19 Ohio St. 526.
These, and other cases relied on by' counsel, are based on the ground that the wife is under all the disabilities of coverture.
It is also well settled in Ohio, and the principle is well supported by decisions in other states, that while a married woman’s covenants in a deed in which she joins with her husband are invalid, and can not be made the foundation of an action against her for a breach, yet, as in the case of an expectant heir, they operate by way of estoppel on her after-acquired title. Hill v. West, 8 Ohio, 222 ; Fowler v. Shearer, 7 Mass. 21 ; Colcord v. Swan, 7 Mass. 291; Massie v. Sebastian, 4 Bibb. 436; Nash v. Spofford, 10 Met. 294; Nelson v. Harwood, 3 Call, 342 ; Wadleigh v. Glines, 6 N. H. 18.
If such is the effect of covenants in a deed properly executed by a married woman, acting under all the disabilities of coverture, a fortiori, it would seem she could be es-topped by such covenants where no such disabilities, in fact, existed. And if the covenants of an heir apparent estop him, though his deed is void as a. conveyance, be *160 cause he has no vested interest, why should it not estop her, who has an inchoate right of dower ?
Of these questions in their order :
First. As to the wife’s capacity to act and contract, aside, from the character of the interest or estate she is disposing of; and,
Second. As to the nature of the wife’s interest which shespught to convey.
First. As to Mrs. Mayhugh’s capacity to act in the premises. The special circumstances of this case are, that in 1857 the husband went to California, leaving his wife and two children living upon the premises in question, with no-other means of support; that he corresponded with his wife-until February, 1859, sending money for her subsistence, after which nothing further was heard or known of him until the fall of 1867, when he returned to Cincinnati; that in February, 1867, eight years since he had been heard from, the wife and the two sons, then of age, being convinced that he was dead, determined to sell the property and buy a home in the country, and for that purpose represented to Robinson, with whom the exchange of property was made, that he was in fact dead; that on Mayhugh’s subsequent return, he neither lived with nor visited his wife, but. brought suit to recover the premises from the plaintiff in error, and, after a finding in his favor, Robinson, to make good his warranty to Rosenthal, paid Mayhugh $3,000-for a quit-claim deed, and the cause was dismissed. Mrs.. Mayhugh rvas not a party to that suit.
It is alleged in the answer, and not denied, that the husband, more than seven years before the deed of the wife- and sons, had absconded and deserted his wife, leaving her no means of support except said premises, and that during that time, his wife had no knowledge of bis whereabouts.
Speaking for myself only, I should be strongly inclined to hold that, under the special facts of this case, the wife had an implied authority, in equity, to incumber or convey this property, if necessary for the maintenance and support of herself and minor children. He was, in law, bound *161 to support them, an;d I am unable to see why, when he has permanently abandoned them, leaving no means for their maintenance except this property, the wife has not an implied authority, as his agent, to sell or incumber his interest in this land, if necessary to provide such support for her and his minor children.
"While such a sale or incumbrance might not, under the rigid rules of the common law, be binding on him, yet, in a court of equity, the highest considerations of public policy" and social duty, would dictate that he should be estopped from recovering the property which had been devoted to the fulfillment of those solemn obligations he had wantonly repudiated.
Waiving this view, we come to the question of the wife’s power over her interest in the property.
The disabilities arising from coverture, rest on the common-law theory of the marriage relation. By marriage, the legal existence of the woman is suspended or, at least, incorporated into that of the husband, under whose protection or cover she acts.
It is said these disabilities “ are, for the most part, intended for her protection and benefit.” 1 Black. Com. 445.
As a logical deduction, it follows, that when this dominion of the husband, and this protecting care permanently ceases by the death of the husband, whether natural or-civil, or by his being exiled or banished, or where he has: deserted and abandoned his wife, leaving her to maintain herself, the disability of coverture ceases, cessante ratione,. cessat ipsa.
There is a wide difference between the powers of a married woman under such circumstances and-those where the marriage relation exists in fact, as to the wife’s capacity to contract, sue, and be sued.
In Gregory v. Paul, 15 Mass. 31, it is said, “ when the husband had deserted his wife in a foreign country., and' she had thereafter maintained herself as a single woman, and for five years had lived in that commonwealth, the *162 husband being a foreigner, and never having been in the United States, she was competent to sue and be sued as a feme sole.”
It is there said that the common-law rule was relaxed from necessity, where the reason upon which it was founded ceased to exist, as, where the husband was exiled, or had abjured the realm, she might sue for her dower as a widow. “In such case, also, she has been permitted to alien her land, without her husband; and in such cases she is exempted from the disabilities of coverture. She may maintain trespass, she may sue for her jointure, and she may be sued as a feme sole. She may also make her will, and she might, in all things, act as if her husband was dead, and that the necessity of the case required that she should have such a power.”
The reason for this is forcibly stated by Putnam, J.: “ Misc.able, indeed, would be the situations of these unfortunate women, whose husbands have renounced their society and country, if the disabilities of coverture should be applied to them during the continuance of such desertion. If that were the case, they could obtain no credit, on account of their husbands, for no process could reach him ; and they could not recover for a trespass upon their person or their property, or for the labor of their hands. They would be left wretched dependents upon charity, or driven to the commission of crimes to obtain a precarious support.”
Numerous cases might be cited in support of this doctrine, which we need not notice. They have been examined at length in Benadum v. Pratt, 1 Ohio St. 403. In that case, the wife had, by the gross abuse of her husband, been compelled to live separate from him, so that a separation defacto existed, she maintaining herself, and having specific property decreed to her as alimony. It was held that she might sue at law as a feme sole in regard to such property.
After an examination of the authorities, it is there said that “It is established by well adjudicated cases in the courts of the different states of this Union that, not only *163 where the marriage relation is suspended by act of law, but where the husband is a foreigner, residing permanently abroad, or where, by his cruelty, a separation is forced, aud the wife removes to another state, and maintains herself as a single woman — in either of these cases, whether the wife have or have not a separate allowance, she is entitled to sue and be sued as a feme sole. And this right extends to whatever contract she may make, and to whatever property or interest she may have.”
In Bean v. Morgan, 4 McCord, 148, it was held that, if the husband departs the state, with intent to reside abroad, and without the intention of returning, his wife becomes competent to contract and to sue and be sued as a feme sole.
In Gregory v. Pierce, 4 Metcalf, the court say: “ The principle is now to be considered as established in this state, as a necessary exception to the rule of the common law, placing married woman under disability to contract or maintain a suit, that where the husband was never within the commonwealth, or has gone beyond its jurisdiction — has wholly renounced his marital rights and duties, and deserted his wife — she may make and take contracts, sue and be sued, in her own name, as a feme sole. It must be a voluntary separation, embracing both fact and intent of the husband to renounce, de facto, and as far as he can do it, the marital relation, and leave his wife to, act as a feme sole.”
It is true that the English rule, prior to recent statutes, limits this exception to cases of divorce a vinculo-, or of civil death, as where the husband has abjured the realm, been exiled or transported for crime, or where he was a foreigner at the time of marriage, and continued to reside abroad; but the whole current of American authority, as well as recent legislation in this country aud England, is to the effect that where the husband abandons his wife permanently and neglects or refuses to support her, but compels her to maintain herself, under such circumstances and length of time as to show a renunciation of his marital *164 rights, and a separation de facto, she may act as a feme sole, in making contracts relating to her property interests, as well as to sue and be sued.
This exception to the rigid rule of the common law is dictated in the interest of the abandoned wife, by public policy, common humanity, and natural justice, in order that the wife may provide herself with that support and protection which is denied her by a faithless husband.
Schouler’s Domestic Relations, 295, says: “ The current of American authority, legislative and judicial alike, decidedly favors so just a doctrine. And, in England, recent statutes secure to married women privileges to a similar extent, under like circumstances.” See, also, Anderson v. Jacobson, 66 Ill. 522.
The facts of this ease show a permanent abandonment of the wife,' and a refusal to support her and his children longer. It was a separation defacto. Eor more' than eight years the state of coverture had in fact ceased, and she was left more helpless than a feme sole. He did all that was in his power to divorce himself from her, and to invest her with power to act for herself. He was absent and unheard of for more than seven years. This raised a presumption that he was dead. Rice v. Lumly, 10 Ohio St. 596; 1 Greenl. Ev. §§ 33-41, and notes; Loring v. Streman, 1 Met. 204.
Relying upon this presumptive evidence, she might have had dower assigned to her at the time she joined in the conveyance. 2 Scrib. on Dower, 211-216. This presumption arises as well where the husband has gone to another state of this Union, as where he has gone to a foreign country. The states are, as to this legal presumption, foreign to each other. Rose v. Bates, 12 Mo. 47; Clark v. Grubb, 41 Geo. 143.
In making this deed, Mrs. Mayhugh acted, as well as she might, as a feme sole, and, in order to make the sale, represented herself as such. So far as appears, she received an adequate consideration for the sale. The contract was fully executed on both sides, as she then supposed.
*165 She does not offer to rescind, by tendering back the consideration ; but retains the fruit of her contract, while treating it as a nullity. In the meantime, her grantee, acting, as we may presume, on the faith of representation and covenants, had improved the property, and conveyed it to a bona fide purchaser, for value — the present plaintiff in error.
If this were an executory contract to convey, and the purchaser sought to enforce a conveyance upon payment of the consideration, equity might refuse to do so; but where she has received the consideration, and executed tbe contract, as far as she had capacity to do so, a court of equity will not aid her to repudiate it. This principle was recognized in Meiley v. Butler, 26 Ohio St. 535. There the wTife, who was living with her husband, induced a buyer to purchase lauds owned in her own right, by verbally agreeing that a debt, due from her husband to the purchaser, should be taken in part payment. It was held that, after such purchase, and a conveyance by her, she could not repudiate this contract as to her husband’s debt, and collect the entire purchase money. As against the purchaser from her, she was estopped by her verbal agreement, although under the disabilities of coverture.
In Bullock v. Griffin, 1 Strobh. Eq. 60, it appeared that during coverture, and after the sale of the husband’s lands, the wife, by agreement with the purchaser, took two shares as an equivalent for her contingent right of dower, and retained possession of them, without setting up any further claim for seven or eight years after discoverture. The court refused to give her dower, on the ground that she was estopped.
So, where a wnfe joined with her second husband in the conveyance of land, she is estopped to claim dower under her former husband in the land so conveyed. Usher v. Richardson, 29 Maine, 415.
And where her deed was void by reason of defective execution, but as executrix of her husband, she brought suit to recover the purchase money for the land conveyed by *166 such deed during coverture, it was held that she thereby affirmed the deed, and would be barred from claiming dower. Share v. Anderson, 7 S. & R. 42.
That a widow may bar her dower before its assignment, by way of estoppel, although she could not convey it or release it, except to the owner of the fee, is well settled. 2 Scribner on Dower, chaps. 11, 12.
Her acts and contracts, in that behalf, are subject to the same equitable rules as those of any other feme sole, and a court of equity, by applying the doctrine of estoppel, will not allow her to commit a fraud.
Upon the whole, therefore, we conclude that, under the facts of this case, the disabilities of coverture were in fact removed, so far as to make her capable of contracting, and suing, and being sued. At least, a court of equity would regard her as a feme sole; and, as such,-bound, by way of estoppel, on her executed contracts manifestly made for her benefit. It is for the interest and protection of a wife, thus abandoned, that she should be capable of acting as a feme sole; and while the rigid and harsh rules of the common law, as it once existed in this state, regarded the wife, who was living and cohabiting -with her husband, as under, or protected by these disabilities; yet where such relation has, in fact, ceased for eight years, she is empowered and justified in acting as a feme sole.
Having so acted, in making this conveyance, and in receiving the consideration, it would be grossly inequitable to allow her to repudiate her contract after having enjoyed its fruits.
Second. It is urged, however, that an inchoate right of dower, being a contingent right merely, could not be conveyed.
This objection relates to the nature of the estate, and not to her capacity to convey. It asserts that, like the mere possibility of an heir apparent, no estate passes by such deed.
We have seen that although the deed of an heir apparent is void, as a conveyance, it may operate by way of *167 estoppel, and that the same rule applies to fem.es covert, as to after-acquired title. The only remaining question is, whether Mrs. Mayhugh could, by estoppel, bar her right to dower.
A widow, before dower is assigned, having only a vested right to be endowed, can not, at law, convey such right — ■ she can only release it. Yet, being a feme sole, she can effectually bar such right, by way of estoppel, as we have seen. Being a feme sole, equity will treat her as such, and enforce her contracts in relation to her unassigned dower, when She has estopped herself by her acts or contracts.
Mrs. Mayhugh, being empowered to act as a feme sole, by the long absence beyond the state, and desertion, of her husband, could as fully bind herself as a widow, i. e., she was as fully relieved from the disabilities of coverture as if her-husband had been actually dead. She was entitled, on that proof, to have dower assigiied as if she were a widow in fact. As a widow might do, she joined with the heirs in the deed to Robinson and covenanted the title.
Had she been under all the disabilities of coverture, and joined with her husband in such covenants, she would, according to Hill v. West, have been estopped from asserting an after-acquired title. If, then, a widow, or a feme covert, in fact, by uniting with her husband, can bar her future right to have dower assigned, or estop herself from asserting an after-acquired title, we are unable to see why a married woman, under the circumstances of this case, who has all the powers of a feme sole, can hot do so.
Her inchoate right of dower had presumptively become a vested right, subject to be diverted by a rebuttal of the presumption of death.
As inchoate, it was an interest in the land created bylaw for the wife’s benefit and vested in her. It was a legal right, contingent on her surviving her husband, as to whether it would ripen into an absolute rightto have dower set-off by metes and bounds, and to enter upon its enjoyment. McArthur v. Franklin, 16 Ohio St. 193; Black v. Kuhlmam, 30 Ohio St. 196.
*168 In Black v. Kuhlman it was held that, where she joined her husband in releasing it to a mortgagee, it was a present valuable interest in the estate, susceptible of being estimated, the value of which belonged to the mortgagee as against prior mortgages which she did not execute.
This right of dower, even if it is regarded as inchoate merely, was then something more than the naked possibility of an heir apparent. It was a present vested right of value, contingent on her survivorship.
Treating Mrs. Mayhugh as a feme sole, as to her capacity to contract, we find nothing in the nature of her interests in the property to prevent her from binding herself by her representations and covenants so far as to estop her in equity from repudiating a contract fully, executed in good faith by her grantee, and as she supposed and intended at the time fully executed on her part.
Needles v. Needles, 7 Ohio St. 432, is relied on in support of an opposite conclusion. That case, so far as it bears on this, merely holds that, at common law, the mere expectancy or chance of succeeding to an estate is not the subject of release or assignment, but, as the opinion show’s, may be upheld in equity ; and that a married woman must joiu her husband, as provided by statute, to bind her real estate, but it is also expressly held that in equity it is a different question'.
Equity recognizes the separate existence of the wife, even under all the disabilities of coverture, and regards her as a rational and responsible subject of its jurisdiction, entitled to its protection, and amenable to the decrees of a court of conscience. Phillips v. Graves, 20 Ohio St. 380; Levi v. Earl, 30 Ohio St. 147 ; Mount v. Morton, 20 Barb. 123 ; Ford v. Ford, 4 Ala. 142 ; Fitz v. Hall, 9 N. H. 41; Evans v. Bucknell, 6 Vesey, 174; Herman on Estoppel, § 494 ; Wright v. Arnold, 14 B. Mon. 638 ; Dunn v. Cudney, 13 Mich. 239.
It is said that there was no fraud in Mrs. Mayhugh’s representations that her husband was dead, because it does not appear she knew' it was false. This was not necessary. It *169 is not necessary, to an equitable estoppel, that the party should design to mislead, it is enough if the act or declaration was calculated to and did in fact mislead another acting in good faith and with reasonable diligence. 14 Ohio St. 102 ; Blair v. Wait et al., 69 N. Y. 113.
The judgment of the district court is reversed, and that of the common pleas affirmed, and cause remanded.