WILLIAMS *et al. v.* WILLIAMS.

*(Circuit Court, D. Kansas.* November 25, 1889.)

GIFTS—INTER VIVOS—HUSBAND AND WIFE.

Plaintiff, living in England, separated from her husband. The latter came to America, married defendant, who did not know of his former marriage, and died, leaving children by both wives. Some time before his death he transferred his property, without consideration, to defendant, and, though he continued to have the use of it for his support, it did not appear that he could dispose of it without defendant's consent. Plaintiff never lived in the state in which the husband lived in this country, so that the husband's conveyances to defendant did not require plaintiff's signature. Defendant worked to help accumulate the property, and nursed the husband for several years, while he was disabled. *Held,* that plaintiff and her children had no claim on the property thus transferred to defendant.

In Equity.

*Gillett, Fowler & Saddler,* for complainants.

*Frank H. Hay* and *Johnson, Martin & Keeler,* for defendant.

FOSTER, J. This action is brought by Anne Williams, widow, jointly with eight of her children, heirs at law of William Williams, all subjects of Great Britain, and residents of Wales, against Catherine Williams, of Osage county, Kan., widow of said William Williams, under an illegal marriage, to recover the estate left by said William Williams, deceased, alleged to be worth about $8,000. Anne Williams and William Williams were married in Wales in 1846. At the date of this marriage, Anne had, in her own right, in possession and expectancy, quite an estate. By the law of England, the husband at marriage became entitled to her personal property, and did receive quite a sum of money from her estate. There was an antenuptial contract entered into between the parties, by which Anne reserved an hundred pounds, the income of which was to be and remain her separate property. Among other things, it was provided in said contract, in case Anne should survive her husband having living issue, the estate was to be divided between Anne and her children in such proportions as William might, by will, designate. The parties lived together until 1871, when they separated, and in 1873 William came to America, bringing with him about £300. In 1875, Williams and the defendant, Catherine, were married in Kansas, and have two children living, issue of such marriage. Williams died in 1887, leaving quite an estate, among which is the farm in Osage county on which the defendant and her children now reside. The testimony as to whether Catherine, at the time of her marriage with Williams, was aware of his having a wife living in the old country, is somewhat conflicting; but I think the weight of the testimony and circumstances tend to show that she did not have such knowledge prior to the marriage, but first became aware of it after the birth of her first child. At the time of the marriage, Catherine had about $500 of her own money, which went into the hands of her husband. These parties lived together, as man and wife, for 12 years. They were industrious and thrifty. The defendant worked as well as her husband to accumu-

late property, and she nursed and attended him for several years, whil disabled from a sore on his leg. During the time of their marriag Williams from time to time transferred and turned over to Catherine a the real and personal property, so that at the time of his death it wa all in her name. The farm was deeded to her in 1885, the live-stoc transferred in 1886, and the other personal property, from time to tim for several years prior to Williams' death. With the exception of th $500 of her own money and her personal services in the accumulati of the property, there was no other valuable consideration for the tra fer, and it was avowed by the parties that the object of the transfer wa to save the property to Catherine and her children, and keep it from the wife and children in Wales. So the transfer rests mainly as a gift from Williams to Catherine. Under this state of facts, the question arises, which party has the best right and title to the estate? The antenuptial agreement cuts no particular figure in the case, as Williams made no will, and, the estate being in Kansas, it is governed by the laws of this state, so far as descent and distribution are concerned; and as the complainant, Anne Williams, never resided in Kansas, her signature was not necessary to a conveyance of the husband's real estate.

The main question, in its broadest sense, is simply this: Can a married man give away his property, during coverture, for the purpose of preventing his wife from acquiring an interest therein after his death? The law seems to be that if such gift is *bona fide*, and accompanied by delivery, the widow cannot reach the property after the donor's death. *Withers* v. *Weaver*, 10 Pa. St. 391; *Decouche* v. *Savetier*, 3 Johns. Ch. 190; *Holmes* v. *Holmes*, 3 Paige, 363; *Ford* v. *Ford*, 4 Ala. 145; *Stone* v. *Stone*, 18 Mo. 390. Neither the wife nor children have any tangible interest in the property of the husband or father during his life-time, except so far as he is liable for their support, and hence he can sell it or give it away without let or hindrance from them. Of course, the sale or gift must be absolute and *bona fide*, and not colorable only. And if the sale or gift would bind the grantor it would bind his heirs. *Carithers* v. *Weaver*, 7 Kan. 110. It is claimed by the complainants that these transfers from Williams to Catherine were not absolute, but that the grantor and donor still used, enjoyed, and controlled the property. This conclusion is reached more from the fact that the parties assumed and held the relation of husband and wife to each other, rather than from any direct testimony to that effect. True it is, he continued to live on the farm as before, and quite likely looked after the business, but it does not appear that he had the power to dispose of any of the property without Catherine's consent. Besides this, there was a high moral obligation imposed upon Williams to provide for and support this woman and children, to say nothing of the valuable consideration of money and labor she had contributed to the common fund. If there remains any property owned by Williams at his death, the complainants are entitled to a decree for it; if not, the bill must be dismissed.