MARINE MIDLAND TRUST COMPANY OF BINGHAMTON, as Trustee of BYRON STANFORD TRUST, Respondent, *v.* MARGARET EDITH STANFORD, Individually and as Administratrix, etc., of BYRON STANFORD, Deceased, Appellant, and WILLIAM BYRON STANFORD and Others, Respondents, Impleaded with JOHN C. STANFORD and Others, Defendants.

Third Department, January 11, 1939.

*Anthony J. LaBelle* [*James J. McNaughton* of counsel], for the appellant.

*Keenan, Harrison & Coughlin* [*Neil G. Harrison* of counsel], for the plaintiff-respondent.

*Herbert H. Ray*, guardian *ad litem*, for infant defendants-respondents.

*Schwarte, Slade, Harrington & Goldsmith* [*John A. Slade* of counsel], for certain defendants-respondents.

HILL, P. J. The plaintiff-respondent, a trust company organized under the banking laws of the State of New York, brings this action for a judicial settlement of its account of trusteeship under an *inter vivos* trust, wherein Byron Stanford, now deceased, was the settlor. Margaret Edith Stanford, the widow, individually and as administratrix of his estate, is the appellant; the respondents, other than the plaintiff, are the remaindermen in the trust. The facts and issues are somewhat similar to those in *Newman* v. *Dore* (275 N. Y. 371).

Settlor and his wife were married in 1896. Eighteen children were born of the union, and twelve were living when, in 1931, Mrs. Stanford brought an action for, and obtained, a decree of separation which awarded her the custody of the infant children and alimony of $150 a month. In March, 1932, after a receiver had been appointed to sequester the husband's property, an agreement was reached whereby $9,182.14 was paid over to the wife and a house of the value of $5,000 belonging to the husband was conveyed to himself and his wife as tenants by the entirety. She also was to receive the rentals from other real estate of the agreed value of $6,600 held by the parties as tenants by the entirety. Assuming the value stated of the residence, and taking into consideration the death of the settlor and the vesting of title to the real estate in the wife, she received $20,782.14 and he retained $17,000, which is substantially the amount of the corpus in this trust fund.

The trust agreement " duly assigned and transferred " the property to the trust company. The management thereof was limited by a provision that it was " not to sell, liquidate or dispose of the same or any portion thereof without the written consent of the first party, it being his intention and desire that the same be retained in the present form of investments, except said bank accounts, and such obligation as may mature or be paid in accordance with the terms thereof." There were two provisions as to revocation: " The trustee shall, upon the written request of first party, at any time and from time to time, pay him such portion of the corpus as he may request, not exceeding, however, in the aggregate Two Thousand Dollars ($2,000.00), in any calendar year." The settlor was permitted to " modify, amend, or alter in any manner or revoke, in whole or in part, this indenture * * *. In the event of the revocation of this agreement in its entirety or of the withdrawal of the corpus of this trust, first party shall pay to the trustee a revocation fee." After the death of the settlor, the trustee was to deliver an English investment of the value of about $500 to a church at Hamilton, Bermuda, and " pay and distribute the balance of the corpus, together with all income then on

hand or accrued, to first party's children living at the date of his death, equally, share and share alike." The answer of the widow and administratrix asserts a conspiracy between her daughter, the defendant Edith S. Nichols, and the settlor to defeat her rights as a widow.

The opinion in *Newman* v. *Dore* (*supra*) recites that a husband may give away his property, even though thereby the contingent expectant interest of his wife in such property, which will become vested only in the event of widowhood, would be defeated; that the gift and conveyance may not be illusory and " a mask for the effective retention by the settlor of the property which in form he had conveyed," but rather that the gift and transfer must be real and a valid disposition of the property whereby the settlor divested himself of the ownership. In that case the facts indicated that the conveyance was illusory and not real, and that there was no actual divestment of ownership. The transaction, viewed in connection with the extraneous evidence, made it clear, as stated by the court, " that the settlor never intended to divest himself of his property. He was unwilling to do so even when death was near." The opinion further states: " We do not attempt now to formulate any general test of how far a settlor must divest himself of his interest in the trust property to render the conveyance more than illusory. Question of whether reservation of the income or of a power of revocation, or both, might even without reservation of the power of control be sufficient to show that the transfer was not intended in good faith to divest the settlor of his property must await decision until such question arises." So far as the intent of the settlor was a question of fact, it is stated that " The courts have also found, and the evidence conclusively establishes, that the trust agreements were made for the purpose of depriving the decedent's widow of any rights in and to his property upon his death."

The trial court, in discussing whether Stanford had intended to make a real and effective transfer to the bank as trustee, recites the giving of more than half his estate to his wife within a year or two previous, and his concern for the welfare of his children: " The settlor had twelve children whose rights and interests he properly desired to protect. Having turned more than half of the property over to his wife, it was an eminently just and proper provision to insure the other half passing to his and her children, that the indenture of trust should be entered into."

The determining factor as to the validity of the trust is the intent with which the settlor transferred his property to the trustee. If illusory, there is no transfer; if made with the intent to transfer the actual title, it is effective. (*Newman* v. *Dore, supra.*) In

arriving at the intent, the equities between the spouses, together with their settlements and acts, may be considered. (*Matter of Bloomingdale*, 278 N. Y. 435, 445.)

Long in advance of the enactment of former section 249 of the Banking Law (now Banking Law, § 239, subds. 1–3, enacted by Laws of 1938, chap. 352), a person could, by depositing his own money in a bank and declaring his intent, create a trust in favor of another, even without the knowledge of that person, and although the depositor reserved the right to withdraw the money, if he so desired. (*Martin* v. *Funk*, 75 N. Y. 134; *Schluter* v. *Bowery Savings Bank*, 117 id. 125; *Matter of Totten*, 179 id. 112.) This established rule of the common law was codified in the above section of the Banking Law for the protection of the depository. It still continues to be the rule. (*Matter of Fenelon*, 262 N. Y. 308.)

The doctrine of these decisions, together with the failure of the Court of Appeals more recently in *Newman* v. *Dore* (*supra*) to declare a different rule as to formal *inter vivos* trusts, and the equitable distribution obtained under the separation agreement considered with the trust agreement, require an affirmance of the judgment.

RHODES, MCNAMEE, CRAPSER and HEFFERNAN, JJ., concur.

Judgment affirmed, with costs.