PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee under Agreement with JULIUS JANOWITZ, Dated July 12, 1933, as Amended, Plaintiff, *v.* EMMA S. JANOWITZ and Others, Defendants.

Supreme Court, Special Term, Westchester County, July 11, 1939.

*David C. Bennett* [*Thomas B. Gilchrist, Catherine Noyes Lee, Arthur H. Barker* and *John Evans McCoy* of counsel], for the plaintiff.

*George B. Class,* for the defendant Leontine Spiegel.

*Emmet, Marvin & Martin,* for the defendant Home for Incurables.

*Herman & Ernst* [*Harry E. Herman* of counsel], for the defendants Katherine J. Freedman and Ethel J. Gruen.

*Isidor Lazarus*, for the defendant Society for Ethical Culture.

*Henry S. Miller*, for the Workers Fellowship, Inc.

*M. S. & I. S. Isaacs* [*Lewis M. Isaacs* and *David Oppenheim* of counsel], for Isaac Stern, individually and as executor under will and trustee under trust agreement, personal representatives of the estate of Joel Alexander, deceased, trustee, and the National Farm School.

*Proskauer, Rose & Paskus* [*Joseph M. Proskauer* and *Charles Looker* of counsel], for the defendant widow, Emma S. Janowitz.

*Burton C. Meighan, Jr.*, special guardian of Georgine Spitzer.

*Remsen & Remsen*, for the New York Kindergarten Association.

*Cook, Nathan, Lehman & Greenman*, for the Musicians' Foundation, Inc.

*Bertram Lichtenberg*, for Edgar J. Kohler, Florence Kohler and Adele R. Spitzer.

*Harry E. Kuhlman*, for Harriet E. M. Kuhlman.

*John J. Wildberg*, for Jane Sow and Richard Erstine.

*John J. Kirby*, for Joseph Kirby.

ALDRICH, J.   On July 12, 1933, Julius Janowitz executed, duly acknowledged and delivered to the plaintiff as trustee a certain indenture of *inter vivos* trust.   The instrument reserved the right to the donor to modify, amend, alter or revoke the trust agreement, in whole or in part, by an instrument in writing, duly signed, executed and delivered to the trustee.   Pursuant to that reserved right of modification and amendment the donor subsequently executed, acknowledged and delivered to the trustee four separate modification and amendatory instruments as follows: *First.* The first dated August 11, 1934.   *Second.* The second dated March 27, 1935.   *Third.* The third dated September 26, 1935, and *Fourth.* The fourth dated November 27, 1935.   The approximate fair market value of the property in the possession of the trustee under the trust indenture, etc., was on the date of the delivery of the original instrument $392,459.13; on September 26, 1935, $354,448.05 and on the date of the death of the donor $306,934.30.   Julius Janowitz on September 26, 1935, executed his last will and testament in the manner required by the laws of this State.   He died on January 29, 1937, a resident of Westchester county, survived by his widow, the defendant Emma S. Janowitz, to whom he had been married for some twenty years, and two children by a former wife.   His will of September 26, 1935, was thereafter duly

admitted to probate in the Westchester County Surrogate's Court. The value of his estate, excluding the corpus of the fund held by the trustee under the trust indenture and amendatory instruments, amounts in fair market value to approximately the sum of $131,269.94.

This action was originally commenced by the trustee under the trust indenture, as amended, for a judicial settlement of its accounts as such trustee, etc. The widow by her pleading has attacked the validity of the will, the validity of the trust indenture and raises a question with respect to the application of one paragraph of the will, in the event that it be adjudged valid, so far as it relates to certain trade acceptances and promissory notes arising in connection therewith. All of the parties appear to be before the court so that a complete determination may here be had on the subject of these three questions.

Practically all of the facts in the case are undisputed. It would serve no useful purpose to attempt a detailed restatement thereof. So far as any matters of fact appear to be in question the court will try to indicate its determination with respect thereto during the course of this opinion.

The first question to be decided relates to the validity of paragraph "third" of the will which provides as follows: "*Third.* I give, devise and bequeath to President and Directors of the Manhattan Company, and their co-trustee, if any, as trustee or trustees under a certain agreement made and dated the twelfth day of July, Nineteen hundred and thirty-three, between me as Donor and the said President and Directors of the Manhattan Company, as trustee, any and all sums of money on deposit to my credit in banks or trust companies in the United States at the time of my death, and also any and all stocks, bonds, mortgages and other securities which I may own at the time of my death, and also any and all real estate of which I may die seized and possessed, all of which moneys, securities and real estate shall be added to the trust fund which is the subject of the said agreement, and administered in accordance with the terms and provisions thereof, which are to the effect that the income from one-third of the amount hereby added to such trust fund shall be paid to my wife during her life."

The widow and the two children by the former wife claim that the quoted paragraph of the will is illegal and void on the theory that it is an unlawful attempt to incorporate by reference some other instrument in the will of the testator. All parties, other than the widow, interested under the indenture of trust claim that the provision is entirely valid.

The doctrine against incorporation of other documents in a will has been to some extent modified in this State by decisions of the

Court of Appeals. (*Matter of Piffard*, 111 N. Y. 410; *Matter of Fowles*, 222 id. 222; *Matter of Rausch*, 258 id. 327.)  In the *Rausch* case a will was upheld where the testator gave a part of his residuary estate " to the New York Trust Company of New York City, to. be held by said Trust Company in trust for the benefit of my daughter Florence Skillings, under the same terms and conditions embodied in the Trust Agreement made between myself and the said New York Trust Company, dated April 15, 1922, the principal to be disposed of as contained in the said agreement, and which agreement is hereby made part of this my will, as if fully set forth herein " (p. 330).  On September 26, 1935, when the will was executed, there had been in existence for some time the original: trust instrument and the two first amendatory instruments.  These, at that time, all had an independent legal existence and significance.. The *Rausch* case is controlling here on the general validity of the provision in the will.  Whether for the purposes of the administration of the estate under the trust instrument the four amendatory documents shall be considered and included must also be determined.  As to the first two amendatory instruments, both of which were executed and duly delivered to the trustee prior to the date of the will, it seems clear that these are to be regarded as a lawful part of the disposition to be made under the will by virtue of the trust indenture.  The fourth amendatory instrument which was executed and delivered subsequent to the date of the execution of the will cannot be included without an extension of the doctrine of incorporation beyond any limit presently indicated by the decisions of the Court of Appeals.  As to that particular instrument it will be adjudged that for the purposes of a distribution under the will it is of no effect.  The third amendatory instrument presents a more troublesome problem.  The evidence indicates that this document was prepared some days prior to the date of execution.  It was submitted to the trustee unexecuted for approval as to form.  It was approved in writing by the trustee to that extent prior to the date of the will.  It was executed on the same occasion as the will itself and as a part of the same transaction.  It was immediately turned over by the donor to his attorney for delivery to the trustee. It was delivered to the trustee on the same day within a few hours thereafter.  It was executed by the trustee on the same date to indicate its acceptance thereof.  The formal acknowledgment on behalf of the trustee was taken the following morning.  By such execution and delivery by the donor and acceptance by the trustee it thereupon became a valid portion of the trust indenture.  Should this instrument be considered as a part of the trust indenture under which the estate of the testator is to be disposed of by paragraph

" third " of his will? The court believes that it should be so considered and it will be so adjudged. The Court of Appeals has said that the rule against incorporation, well established though it is, is one that will not be carried to a drily logical extreme. (*Matter of Fowles*, 222 N. Y. 222, 233; *Matter of Rausch*, 258 id. 327, 331.) The testator evidently intended that this instrument should be considered as a part of his testamentary disposition. Its execution by the donor and its subsequent delivery on the same day to the trustee are conclusively established. To deny effect to such instrument under the circumstances would be to carry the rule against incorporation to " a drily logical extreme." (*Matter of Fowles, supra*, p. 233.) To summarize, it will be adjudged that article " third " of the will is valid and that thereunder the portion of the estate of the testator therein provided for passes under the indenture of trust as modified and amended by the three first amendatory instruments to be held in trust and disposed of as therein provided, and that the fourth amendatory instrument forms no part of the testamentary disposition under the " third " paragraph of the will because it was not in existence at the date when the will was executed. The widow contends that the *Rausch* case does not apply because there the trust was irrevocable by the donor while here a full right of revocation and modification was reserved. The decision of the *Rausch* case does not appear to have proceeded primarily upon that ground. This court does not see any difference in the rule to be applied under the doctrine of incorporation. What the effect would be if the testator had attempted to revoke the trust *in toto* before his death need not be now considered. The fact is that he did not so revoke it. By the decision here as above indicated, effect as a part of the will is to be given only to those instruments which had an independent legal existence and significance as a part of the trust indenture at the date when the will was executed. The conclusion here reached is supported by substantial authority. (*Old Colony Trust Co.* v. *Cleveland*, 291 Mass. 380; 196 N. E. 920; *Koeninger* v. *Toledo Trust Co.*, 49 Ohio App. 490; 197 N. E. 419.)

The second question involved in the action relates to the validity of the trust indenture and four amendatory instruments, so far as the trust fund itself is concerned. The claim of the widow is that the purported trust thereby provided for was illusory as against her rights of inheritance by virtue of the Decedent Estate Law (§§ 18, 83). The other parties interested under the trust instruments claim that such instruments are entirely valid and enforcible against any alleged claim of the widow adverse thereto.

There are collated in two annotations in American Law Reports Annotated many cases on the subject of transfers by a husband in

derogation of the anticipatory rights of the wife to inherit by intestacy or under his will. (64 A. L. R. 466; 112 id. 649.) The leading case in this State is *Newman* v. *Dore* (275 N. Y. 371). The general principles to be applied have been indicated in that case. It was there stated that " the only sound test of the validity of a challenged transfer is whether it is real or illusory " (p. 379). " The test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer " and " the good faith required of the donor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property " (p. 379). The general principle has been stated in other language by various authorities. " It is a general rule that, inasmuch as the wife obtains no interest in the husband's personalty until his death, the husband may dispose absolutely of a part or all of his personal property during his life, and that such transfer or gift does not constitute a legal fraud on the marital rights of the wife." (30 C. J. 523, § 39.) " The wording of the rule shows that it applies to absolute transfers made and to take effect during the life of the husband. It does not apply where the transfer is a mere device by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share in his personal property." (30 C. J. 524, § 39.) " The general rule to be extracted from the cases appears to be that a gift *inter vivos* by a husband of his property, if absolute and *bona fide*, and not made with a fraudulent intent, is not a fraud on the right of the wife to share in her husband's property at his death; but that, if the gift is merely colorable, that is, if the transfer is apparently a gift, but in reality a mere device by which the husband is enabled to use and enjoy his property during his lifetime, and at the same time deprive his wife of her property rights at his death, or if the gift is made with a fraudulent intent, then it is a fraud on the wife's rights." (64 A. L. R. 467.) " By absolute is meant an irrevocable, final, and *bona fide* transfer of property without consideration. The term ' *bona fide* ' as here used does not refer to the motive for making the gift, whether to deprive the wife of her property rights or not, but rather to the intent of the donor to divest himself of title to the property." (64 A. L. R. 472.) " If the transfer be colorable merely, that is to say, if it be a mere device or contrivance by which the husband does not part with the absolute dominion over the property during his life, but seeks thereby to defeat the claims of his widow at his death, the law pronounces it a fraud upon her rights." (*Rabbitt* v. *Gaither*, 67 Md. 94; 8 A. 744.) Each of

these statements of the rule is sustained by many cited cases to which reference may be made. Tested by these general rules, and particularly by the reasoning of the decision in *Newman* v. *Dore (supra)*, this trust is of an illusory nature. Here, as there, the donor reserved a right of revocation and modification, etc., either in whole or in part. Here, as there, he reserved to himself the income of the fund during his life. Here, as there, he reserved the right to make withdrawals of securities and substitutions in his own judgment and discretion. Here, as there, he reserved a substantial measure of control over the management of the trust by the trustee. There is no substantial difference between the situation presented here and the situation presented in *Newman* v. *Dore*.

This conclusion, however, that the trust is illusory, does not finally dispose of the controversy on this phase of the case. It still remains to be determined to what extent, if any, the plaintiff may be entitled to relief against the trust by the decree of this court. Excluding the so-called " Totten " trusts of bank deposits under the banking laws, etc., and without considering the rights of creditors to which certain special rules are applicable and which are not involved now, alleged trusts created by a husband during his lifetime may be regarded, so far as the claim of a widow under the Decedent Estate Law is concerned, as of three general classes: *First.* There may be an absolute conveyance in trust by the husband during his lifetime, irrevocable in form and under which he parts absolutely in good faith with all ownership over the trust property, and surrenders all dominion thereover. Such a trust, otherwise valid, is equally valid against any claim of the widow under the Decedent Estate Law. (*Newman* v. *Dore, supra.*) *Second.* There may be a transaction where the reserved rights of the donor are so extensive in various matters that the alleged trustee is merely the agent of the donor and in legal effect merely a custodian, without discretion and without authority. Such a transaction does not pass any title from the donor and such property passes as his estate upon his death. (*Newman* v. *Dore,* 275 N. Y. 371, 380, citing Restatement, Trusts, § 57, subd. 2; *Matter of Ihmsen,* 253 App. Div. 472.) *Third.* There may be a situation where a trust is created, generally lawful, but under which the reserved control of the donor is so great as to render it illusory or unreal as against a surviving widow whose rights are thereby prejudiced. Such a trust would be valid as to all parties except the widow and as to her it is invalid only to the extent that she is prejudiced thereby. Such a trust comes within the rule that while " from the technical point of view such a conveyance does

not quite take all that it gives, but practically it does," which is enough to render it an unlawful invasion of the expectant interest of the wife. (*Newman* v. *Dore, supra,* p. 381, citing authorities.) Here, this trust is not of the description specified in the first class. Nor is the transaction of the description referred to in the second class. It is illusory and unreal so far as the expectant interests of the wife are concerned and to that extent only. The wife is entitled to have such a conveyance set aside only to the extent that it affects her present existing rights. (30 C. J. 526, § 40, and cases cited in the L. R. A. Annotations; *Deke* v. *Huenkemeier,* 260 Ill. 131; 102 N. E. 1059; 48 L. R. A. [N. S.] 512, and cases cited.) What are the rights of the widow to be protected here by a decree with respect to the trust fund in the possession of the trustee at the date of the death of the testator? We start with the known facts that the husband is deceased and that he left a last will and testament which has been duly admitted to probate. We add the adjudication that the "third" paragraph of the will is valid and that under this paragraph the portion of the estate therein referred to passes in the manner and for the purposes specified in the original trust indenture as amended by the first three supplemental instruments. Thereby the property of the deceased forming the corpus of his estate, and excluding the trust fund, amounts, as stated, to $131,269.94. The paragraphs of the will itself which dispose of the estate are three in number. By the "fourth" paragraph the sister of the deceased was given any and all sums of money on deposit to the credit of the testator in banks or trust companies in Czechoslovakia at the time of his death. The exhibit in evidence presented by the widow indicates that the amount passing under this "fourth" paragraph is less than $500. By the disputed "third" paragraph the disposition of the estate is, under the trust indenture as amended, as above indicated. The "fifth" paragraph gives the rest, residue and remainder of the personal estate of the testator to the widow absolutely. This bequest is stated to be worth approximately $1,000. The trust agreement, as amended by the first three supplemental instruments, disposes of the property covered by the "third" paragraph of the will as follows: One-third of the property passing under the "third" paragraph goes in trust for the use of the widow during her lifetime. The direction is to "pay over or apply the net income thereof to the use of Emma S. Janowitz, beloved wife of donor, in equal quarterly payments during her lifetime." One other third of such property is given to the sister of the deceased in trust during her lifetime. The remaining one-third of such property goes absolutely to various beneficiaries in specified proportions. Of this remaining one-third the widow receives outright 109/1000ths

thereof. This disposition, so far as the widow is concerned, was contained in the original indenture. The first two amendatory instruments do not cut down her participation in any property or income from the trust created for her benefit thereunder. The third amendatory instrument purported to cut down the income of the trust fund created for her benefit, so far as concerned the trust fund itself, so that such income thereof was thereby limited to $5,000 per year but said instrument expressly provided that " the income from one-third of any amount which may be added to the trust fund by donor's will shall be paid over to donor's wife in full without regard to such limitation." If we apply this distribution to the estate of the deceased passing under his will the widow, then, receives the following: Approximately $1,000 outright under the " fifth " paragraph, one-third of the entire estate after deducting the foreign bank deposits in trust for her lifetime, without limitation as to income, and 109/1000ths of the other one-third outright. Such disposition of the estate by the will appears to give the widow everything, either outright or in trust, which she is entitled to from the estate of her husband under the Decedent Estate Law. The right of the wife under the Decedent Estate Law to take what would be in this case one-third of the estate absolutely in the event of intestacy, is qualified by the right of the husband to make a valid will. By that will, under section 18 of the Decedent Estate Law, the testator was not obligated to give one-third of his estate to his wife outright. He could give that one-third in trust for her use and benefit during her lifetime. The right of election under certain circumstances provided for by section 18 of the Decedent Estate Law does not exist to the widow if the testator provides for her benefit to the extent and in the manner therein indicated. This testator appears to have done everything that the law required. The outright bequest of 109/1000ths of the additional one-third will in itself exceed the $2,500 cash allowance. If it be argued that certain provisions of the trust indenture as three times amended may be considered as in some way prejudicial to the widow, the answer is that all of the provisions appear in substance to be authorized by the Decedent Estate Law and, in any event, the property passing under the will will be, in effect, a testamentary trust so far as the one-third for the widow is concerned, over which the surrogate would have the equitable jurisdiction recently conferred by the amendment to section 18.

So considered it is not apparent that the widow, whose right to apply to make an election has been extended, has really any right of election against the provisions of the will. But whether she has or not, section 18 does not purport to give her any right to elect

against the provisions of an *inter vivos* trust. The doctrine of an illusory trust, to be applied under the authorities cited, has its foundation in judicial effort to see that a widow is not inequitably deprived of her proper share to which she would otherwise be entitled in the estate of her husband. This claim of the widow in this action, with respect to the trust, is of an equitable nature. Seeking equity she must do equity. The fourth supplemental instrument does not affect the rights of the widow at all. The third supplemental instrument, as indicated, with respect to the one-third trust fund given for the benefit of the wife during her lifetime, purported as to that particular property forming a portion of the trust fund to limit the net income thereof receivable by the wife to $5,000 per year. The direction is " and to pay over or apply any of such net income in excess of $5,000 a year to the use of the National Farm School hereinafter named, during the lifetime of the said Emma S. Janowitz." As previously noted, the same paragraph of that instrument specifically provided that the foregoing limitation should not be applied to the income from the one-third of any amount which may be added to the trust fund by the will, which is directed to be paid over to the wife in full.

We have then the situation that the only difference between the will as supplemented by the trust indenture and first three amendments, and the trust fund as constituted by the trust indenture and all four amendments, is that with respect to the trust fund only there is a limitation of $5,000 per year for the widow. In determining the validity of such an instrument it has been said that the rights of the widow are to be measured by the will and the trust instruments considered together. (*Weber* v. *Salisbury*, 149 Ky. 327; 148 S. W. 34.) So considered it cannot be said that there is any evidence whatever of any intention of the testator generally to deprive his widow of the share to which she would otherwise be entitled in his estate. The most that can be said is that the third amendment indicates a limited intention on the part of the donor with respect to the trust fund only to limit her annual income therefrom to $5,000. This difference in the income is more theoretical than real because in practical operation it is quite unlikly that such income will exceed $5,000 per year. Such a limitation contained in the will may be assumed sufficient to permit the widow to make an election against the will, but the same result does not necessarily follow here in this action of an equitable nature. The situation disclosed by the record does not appear to be at all inequitable. Such a situation has been regarded by the Appellate Division in the Third Department as indicating the validity of the entire *inter vivos* trust. (*Marine Midland Trust Co. of Binghamton* v. *Stanford,*

256 App. Div. 26.)    It was there held that the equities between the spouses must be considered.

Apart, however, from the general principles of equity and viewing the situation as one in which there is a potential disadvantage to the wife by the possibility that in actual operation she may be deprived of some excess income of the trust fund beyond $5,000 per year, full justice between the parties can be done here by adjudging the invalidity of the third amendatory instrument so far as it purports to limit such income to the widow to $5,000 per year and to give the excess, if any, to the National Farm School.    There is no difficulty in such an adjudication because the National Farm School, in its brief, states that it is entirely ready and willing to waive any claim which it may have to such excess income, if any. It will, therefore, be adjudged that the trust agreement represented by the original instrument and the four supplemental instruments is valid in all respects as against the widow and that the corpus of the trust fund shall be disposed of thereunder, with the exception only that it will be adjudged that the limitation by the third supplemental instrument of the income of the wife to $5,000 per year is illegal and void as against her because to that extent she may be prejudiced in her rights under the will to which she might otherwise be entitled. In final result such adjudication is the equivalent of returning the widow's share of the trust fund to the general estate, passing it back through the will to the trustee for disposition in accordance with the provisions of the will and trust indenture.

The third question relates to the trade acceptances and promissory notes in connection therewith. Without any elaborate analysis of that situation, it is sufficient to say that it clearly appears that it was the intention of the testator that such property should pass under the " third " paragraph of his will.    It will be so adjudged.

The merits of the account as filed have not been considered. An interlocutory decree will be granted in accordance with this memorandum, under which the accounts presented by the plaintiff will be considered as filed, and all parties in interest afforded an opportunity to present such objections thereto as they may desire, for such further proceedings thereon as the case may require.

Settle findings and judgment on five days' notice at chambers, Poughkeepsie.

All pleadings and exhibits submitted in this matter have been forwarded to the clerk at Special Term, Part I, White Plains, where they may be withdrawn by the parties entitled thereto.