Richard A. THOMAS, Martha Ann Thomas, and Mary Virginia Thomas Ragan, Appellants,

v.

BANK OF OKLAHOMA, N.A., Appellee.

No. 60207.

Supreme Court of Oklahoma.

July 24, 1984.

Sam T. Allen, III, Loeffler & Allen, Sapulpa, for appellants.

James M. Sturdivant, W. Thomas Coffman, Teresa B. Adwan, Gable & Gotwals, Tulsa, for appellee.

DOOLIN, Justice.

Can forced heir election under 84 O.S. 1981, § 44 be defeated by placing assets in

a revocable inter vivos trust? We answer in the negative.

Richard and Martha Thomas were married in 1953, and two children (co-plaintiffs/appellants) were born of that union. In 1976 Martha placed the bulk of her separate inherited property in a revocable vivos trust with herself and the appellee/bank serving as trustees. She maintained complete control and dominion over the assets at all times. Upon her death in 1981 the trust directed the Bank to pay the trust interest to Richard and the two children equally. This amounted to about $50,-000 per year each. Richard elected to take against the will, and demanded that the trust assets be included in the estate for this purpose. Both parties filed summary judgment and the district court granted defendant/bank's motion. Richard appealed. We reverse.

Bank argues assets of a decedent's property are controlled by 84 O.S.1981, § 213:

"When any person having *title* to any estate not otherwise limited by marriage contracts, dies without disposing of the estate by will, it descends and must be distributed in the following manner: ...." [emphasis added].

It argues that Martha did not have *title* to the trust property—the bank had proper title—and thus the trust property should not be included in her estate for distribution purposes.

We note in passing that the federal government considers such a trust to be property of the decedent and includable in the estate for estate tax purposes. See *IRS Reg. 25,2511–2(c)*; *Sanford's Estate v. Commissioner of Internal Revenue*, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939).

Bank cites *Sanditen v. Sanditen*, 496 P.2d 365 (Okl.1972), as authority for the proposition that a spouse's marital share is contingent, not vested, until the death of the other spouse. That case goes on to state:

"In regard to the separate property of a married man, it appears to be well settled in this jurisdiction that a husband may give his separate property away,

during his lifetime, if the gift is *bonafide and complete* and neither the wife nor children have any claim to the property of the husband or father, except insofar as he is liable for their support." [emphasis added].

To this Court, the key is contained in the underlined words: "bonafide and complete." A gift is not a gift if the donor retains right of complete control and dominion, and especially the right to take back the "gift" at any time.

*Sanditen* seems to distinguish between joint property and separate property: "A wife has no vested interest in property acquired during coverture, but a contingent interest which the law protects. For instance, it well established a husband cannot make a gift which is incomplete in that he retains some interest in the gift during his lifetime thereby depriving his wife of her rights in the property at his death, as provided in 84 O.S.1961, § 213."

We have long followed the holding in *Sanditen*, i.e. a spouse may give away his or her separate property, providing the gift is complete and delivered and not violative of the law or fraudulent. See *Farrell v. Puthoff*, 13 Okl. 159, 74 P. 96 (1903) and cases subsequent. Bank agrees, citing *York v. Trigg*, 87 Okl. 214, 209 P. 417 (1922).

In *Farrell*, this Court approved the rule announced in *Williams v. Williams*, 40 F. 521 (Cir.Ct., D.) (Kans.1889):

"The main question, in its broadest sense, is simply this: Can a married man give away his property, during coverture, for the purpose of preventing his wife from acquiring an interest therein after his death? The law seems to be that if such gift is bona fide, and accompanied by delivery, the widow cannot reach the property after the donor's death .... Neither the wife nor the children have any tangible interest in the property of the husband or father during his lifetime, except so far as he is liable for their support, and hence he can sell it or give it away without let or hinderance

from them. Of course, the sale or gift must be absolutely bona fide, and not colorable only. And if the sale or gift would bind the grantor, it would bind his heirs."

*Williams* appears to be quite similar to our fact situation. The complainants argued the gift in question was not absolute, that the donor still used, enjoyed and controlled the property. The *Williams* court found, however, that the donor could not dispose of the property by himself and thus found the gift complete. The contrary is true in our case; the donor retained power to dispose of the property herself.

Bank further argues Oklahoma law does not require the donor spouse to relinquish control of gift property in order for the gift to be held a complete gift. It cites us to *Alexander v. Alexander*, 538 P.2d 200 (Okl.1975), wherein the deceased spouse (while living) placed funds in a joint tenancy bank account, naming another relative as co-joint tenant. This Court held that joint tenancy took the funds out of his estate and thus defeated the surviving spouse's attempt to claim as a forced heir under 84 O.S. § 44. The Bank ignores the distinguishing feature between *Alexander* and our fact situation: one was joint tenancy and the other trust law. As we said in *Alexander*, quoting with approval from an Oklahoma law review article, "The survivor [in joint tenancy] will get the legal title and unless he takes the title through fraud or in trust, he will get the beneficial interest."

*Alexander* is further distinguished because the joint tenancy bank account was held as "A *and* B", thus forbidding "A", the settlor, from dealing unilaterally with the account corpus. In this respect, *Alexander* is similar to *Williams*, supra.

Another case similar on facts is *Courts v. Aldridge*, 190 Okl. 29, 120 P.2d 362 (1941), wherein the husband deeded farming property to his daughter, but during his lifetime kept complete control of it and acted as if he still owned it. We ruled the transfer was in fact a "resulting trust":

"A resulting trust arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest [retained by grantor] is not to go to or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the grantor whom equity deems to be the real owner." [Citations omitted]. (Parenthetical phrase supplied).

*Courts* is factually different from our case only in that here a formal trust document was executed and that Martha could have revoked the trust agreement at any time.

We find additional support for our holding today under the theory of "illusory trust" as detailed in several cases from New York State. See *Newman v. Dore*, 275 N.Y. 371, 9 N.E.2d 966 (1937); *Marine Midland Trust Co. v. Stanford*, 256 App. Div. 26, 9 N.Y.S.2d 648, aff'd. 281 N.Y. 760, 24 N.W.2d 20 (1939); *President & Directors of Manhattan Co. v. Janowitz*, 172 Misc. 290, 14 N.Y.S.2d 375 (1939).

The court in *Janowitz*, citing *Newman*, said the test of the validity of a trust is whether the transfer is real or illusory; that the test is whether the settlor in good faith divested himself of the property ownership or simply made an illusory transfer as a mask for the effective retention of the property. It found its trust illusory on grounds that the settlor reserved the right of revocation; reversed for himself the income for life; and reserved a substantial measure of control over trust management.

The New York court reviewed an inter vivos trust in *Burns v. Turnbull*, 266 App. Div. 779, 41 N.Y.S.2d 448 (1943), and found it illusory because the settlor was one of two trustees and reserved the authority to remove and appoint trustees without limitation, retained exclusive control over the trust corpus and the right to amend or revoke the trust.

Bank cites Oklahoma's "Uniform Testamentary Addition to Trust Act", 84 O.S. 1981, § 301, which authorizes use of a "pour-over" provision in a will to fund an inter vivos trust, even if the trust were revocable. The pertinent part reads:

"The devise or request shall not be invalid because the trust is amendable or revocable, or both, or because the trust was amended after the execution of the will or after the death of the testator."

Bank uses § 301 to argue the recognition and validity of the revocable quality of Martha's trust. Once that aspect is accepted, Bank says, the logical final step is to validate the trust itself and find the trust property is not a part of Martha's estate.

We do not see the Act in the same light. The Commissioners on Uniform State Laws, who drafted the Act, stated its purpose was more *remedial* than anything else: "The problem sought to be remedied arises from the doubt that exists as to whether the pour-over provisions are valid in view of the general requirement that a will be wholly in writing and signed in the presence of witnesses. In most cases the existing trust is not so witnessed." See "Prefactory Note" to Act.

We also distinguish between the general revocability of a trust, the legality of which there is no doubt, and the effect of revocability on a forced heir's rights under 84 O.S.1981, § 44. Such revocable power cannot be allowed to defeat a survivor's rights to the estate.

It is clear from the cases and statutes cited that Martha's trust estate must be brought back into her probate estate for purposes of forced heirship under 84 O.S. 1981, § 44.[1]

REVERSED AND REMANDED.

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, WILSON and KAUGER, JJ., concur.

SIMMS, V.C.J., dissents.

1. For review on the question nationwide, see 39 A.L.R.3d 14.