### JONAS v. DUNN et al.

No. 18320. Opinion Filed June 26, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

1. **Guardian and Ward—Guardian's "Purchase of Property with Funds of Ward" —Surrender by Guardian of Purchase Money Notes Belonging to Ward and Release of Mortgage and Taking Deed from Mortgagor to Himself.**

Where a guardian procures an order of sale from the county court to sell the real property of his ward, and the order of sale provides that the property be sold for part cash, the balance to be secured by mortgage on the property, and the property is sold in pursuance of such order for part cash with the balance secured by mortgage on the property, and the guardian thereafter surrenders the note evidencing the balance of the purchase price to the purchaser and releases the mortgage, and in consideration of the surrender of the note and release of the

mortgage takes a deed from such purchaser to himself, the transaction amounts to a purchase of the property, with funds belonging to the ward.

2. **Same—Trusts—Property Purchased by Guardian with Funds of Ward Impressed with Trust in Favor of Ward—Remedies of Ward.**

Where a guardian purchases property with funds belonging to his ward's estate and takes title in the guardian's name, such property will be impressed with a trust in favor of the ward, and the guardian acquires no beneficial interest in the property. In such case the ward may either pursue the guardian personally or sue to recover the property purchased with his money, and the property so purchased may be recovered from the guardian or from his grantees who had notice that the guardian had purchased the same with funds of the ward.

3. **Vendor and Purchaser—Constructive Notice to Purchaser as to Condition of Title—Records Putting Purchaser Upon Inquiry.**

A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a reasonably prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it.

4. **Same—"Notice."**

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." Winstead v. Shank et al., 68 Okla. 269, 173 Pac. 1041.

Commissioners' Opinion, Division No. 2.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by Robbie A. Jonas, nee Moore, against Mrs. N. E. Dunn et al. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

H. A. Stanley, for plaintiff in error.

Womack, Brown & Cund, for defendants in error.

DIFFENDAFFER, C. The parties will be

referred to herein as they appeared in the trial court. Plaintiff in error was plaintiff below and defendants in error were defendants below.

The amended petition, upon which the cause was tried, alleged substantially that plaintiff is a member of the Choctaw Tribe of Indians, being enrolled as a new born opposite roll No. ___, and that as such member there was allotted to her as her surplus allotment the N. E. ¼, sec. 26, twp. 2 S., R. 4 W.; that she was the owner in fee simple thereof; that defendants were each and all claiming some right, title, or interest therein, but that none of the defendants have any right, title, or interest in or to said land; that plaintiff is not in the possession of the land, but is entitled to the right of possession; that none of the defendants are in possession of said lands or any part thereof, except E. T. Dunn, but that his possession is wrongful; the prayer was for judgment for possession and quieting title in plaintiff.

After separate demurrers to the amended petition were filed and overruled, defendants N. E. Dunn, E. T. Dunn, Mattie Kimbrell, W. A. Dunn, and Clarence Dunn answered separately from defendant G. C. Jones, first, by general denial and in substance that H. S. Dunn purchased the west half of the quarter section in controversy from one Fannie G. Jones and Ase Jones, her husband; that H. S. Dunn died and these defendants as his heirs inherited their respective interests in the west 80 from him, and are the owners thereof; and that on March 1, 1910, Joseph R. Moore, the father of plaintiff, then her guardian, filed a petition in the county court of Stephens county to sell the above described quarter section; that on April 2, 1910, said county court by decree directed J. R. Moore, as guardian of plaintiff, to sell the same; that in pursuance of said decree and order of sale, Joseph R. Moore, under regular proceedings, sold said land to one S. G. Moore, and upon due hearing the sale was confirmed and a guardian's deed regularly executed and delivered to S. G. Moore; that thereafter, S. G. Moore, by warranty deed, conveyed the west 80 acres to J. R. Moore; that J. R. Moore thereafter by warranty deed conveyed the west 80 acres to Fannie S. Jones; that thereafter said Fannie S. Jones, by warranty deed, conveyed said west 80 acres to said H. S. Dunn, now deceased, who was the husband of defendant, Mrs. N. E. Dunn, and father of the other answering defendants, and that defendants inherited said west 80 acres from said H. S. Dunn; that H. S. Dunn was an innocent purchaser in good faith thereof, without notice of any claim of the plaintiff of any interest or estate in said land; that H. S. Dunn and not these answering defendants have been in possession thereof, openly and notoriously, since October 2, 1911. The answer further alleges that defendant E. T. Dunn is the owner of the east half of the N. E. ¼ of said section 26, and in the possession of the same, and has been in the open and notorious possession thereof for more than 15 years and paying the taxes thereon; that he is a bona fide purchaser for value in good faith, without notice of the claim of plaintiff.

The answer further alleges that said guardian sale divested plaintiff of all her right, title, interest, and estate in and to said land, and since said sale was consummated and completed she has not owned, and has not since acquired, any interest therein.

Defendant George Jones, Jr., answers separately, alleging that he is the owner of the N. E. ¼ of the N. W. ¼ of the N. E. ¼ of sec. 26, relying upon a warranty deed from the other defendants, heirs of said H. S. Dunn.

All the defendants allege that the respective deeds under which they claim are of record in Stephens county, setting out the respective books and pages where same will be found.

Plaintiff by reply denies the validity of the guardian's deed and says that the lands of plaintiff involved in the action were sold together with the lands of Douglas H. Moore, but the attempted sale was "what is known in law as a 'hotchpotch sale' and was a wholly void sale, and that the sale of plaintiff's land was without consideration."

She further alleges that her guardian, J. R. Moore, attempted to sell her said land to S. G. Moore and caused to be placed of record the guardian's deed conveying the land of plaintiff, together with the land of Douglas H. Moore, to the said S. G. Moore, but that S. G. Moore paid no consideration for the conveyance of the lands belonging to plaintiff; that thereafter S. G. Moore, at the instance and request of J. R. Moore and E. T. Dunn, conveyed to E. T. Dunn the east 80 acres, but that said E. T. Dunn paid no consideration therefor to S. G. Moore, and that he knew that S. G. Moore had not paid the consideration to J. R. Moore,

as guardian; that on the same date, October 13, 1910, at the request of J. R. Moore, the said S. G. Moore conveyed to said J. R. Moore the west 80 acres, but that J. R. Moore paid no consideration for said deed, and that he (J. R. Moore) could not take title in himself to said land, because he was the guardian of plaintiff at that time and her father, and that she was only about 6 years of age at that time, and for the further reason that no consideration had been paid for the guardian's deed; that on November 10, 1910, J. R. Moore and Lizzie Moore conveyed to Fannie S. Jones the west 80 acres; that no title passed by said deed, because J. R. Moore had no title; that Fannie S. Jones was a relative of J. R. Moore and Lizzie Moore, and had actual and constructive notice of the lack of title in J. R. Moore; the reply further alleges that both E. T. Dunn and H. S. Dunn at all times had actual and constructive notice of the facts alleged and complained of at the time they took deeds to the lands as set out, and that George Jones, Jr., had "record notice" of the imperfection in the title at the time he took the deed to the 10 acres claimed by him. The reply denies the affirmative allegations in defendants' answer.

The pleadings show that this action was commenced on the 4th day of October, 1923, and the pleadings and evidence show that plaintiff became 18 years of age on the 13th day of December, 1922.

The issues as thus joined were tried to the court on the 8th day of November, 1926, and at the close of plaintiff's evidence a demurrer thereto was sustained by the court, and on the same day motion for new trial was filed and overruled, and judgment entered for defendants. From this order and judgment, plaintiff brings this appeal.

It was stipulated that plaintiff is the original allottee of the lands involved; that she was enrolled under the head of final rolls as a "new born" Choctaw Indian, enrolled as follows: "Robbie A. Moore, Roll No. 1333—Age on March 4, 1905—1 year—Female—Blood 1/32 Census Card No. 554." The original allotment patent was introduced in evidence.

The petition of Joseph R. Moore, as guardian of Robbie A. Moore and Johnson Douglas Moore, to sell the land shows the ownership of separate tracts by Robbie A. and Johnson Douglas Moore, minors, that of Robbie A. Moore being the land in controversy, the N. E. 1/4 of sec. 26, and that of Johnson Douglas Moore being the N. W. 1/4 of sec. 26, twp. 2 S., R. 4 W.

The appraisement fixes the value of the two tracts separately, the N. E. 1/4 at $960, and the N. W. 1/4 at $1,120. The proceedings show due and regular order for hearing, notice of hearing, and publication of the notice.

In pursuance of the order of sale and the order confirming the sale, the guardian, J. R. Moore, executed and delivered his guardian's deed conveying both tracts to S. G. Moore, reciting a consideration of $2,080, and also reciting after the particular description of each tract the separate consideration of $960 and $1,120, respectively.

A note for $1,580 due in 60 days was given, representing the balance of the purchase price, and one mortgage securing the same covering both tracts was given by S. G. Moore. The several deeds sought to be canceled were introduced in evidence, together with the releases of the mortgage above mentioned.

S. G. Moore, the purchaser, was introduced as a witness for plaintiff, and testified in substance: That prior to May, 1910, he lived in Johnston county; that he was not related to J. R. Moore, the guardian, and never knew him until the time the land was being advertised for sale; that at the time the guardian's deed was delivered to him, he paid the sum of $500, part of the purchase price, to J. R. Moore; that he now owns the N. W. 1/4 of sec. 26; that when the note became due he was unable to pay the same; that some time about October, 1910, he procured a loan from the Jennings Investment Company on the N. W. 1/4; that from the proceeds of this loan, he paid J. R. Moore, as guardian, the sum of $662.13, which he testified represented the balance of the purchase price of the N. W. 1/4 of sec. 26, with interest, and that this sum, together with the $500 paid at the time the guardian's deed was executed, was all that he ever paid, directly, on the purchase price of the land; that upon the payment of this $662.13, J. R. Moore, as guardian, released the mortgage so far as it covered the N. W. 1/4. The release was introduced in evidence, and omitting the acknowledgment and filing marks is as follows:

"J. R. Moore, Gdn. State of Oklahoma, Stephens County. Know all men by these presents:

"That I, J. R. Moore, as guardian of

Johnson Douglas Moore, a minor, for and in consideration of the sum of $662.13, to me in hand paid, the receipt of which is hereby acknowledged, do hereby release the northwest quarter of section twenty-six in township two south, and range four west of the Indian meridian, and in Stephens county, Oklahoma, from a certain mortgage given and executed by S. G. Moore to J. R. Moore, as guardian of Robbie A. Moore and Johnson Douglas Moore, minors, on the 3rd day of May, 1910, and recorded July 26, 1910, in Book 4 of page 582, of the mortgage records of Stephens county, Oklahoma.

"Witness my hand and signature, this the 12th day of October, 1910.

"J. R. Moore, Guardian of Johnson Douglas Moore, a Minor."

S. G. Moore testified, further, that when he found that he would be unable to pay for all the land, he went to J. R. Moore, the guardian, and told him that he would have to sell part of the land; that thereafter the witness, J. R. Moore, and E. T. Dunn went together to Loco, to Mr. J. F. Stotts, a notary public, who drew the papers, and there witness executed the deed conveying the E. ½ of the N. E. ¼, sec. 26, to E. T. Dunn; that E. T. Dunn paid therefor the sum of $480; that Mr. Stotts drew the check and asked whom it should be made payable to, and that witness directed him to make it payable to J. R. Moore, which was done; all three being present; that at the same time witness executed the general warranty deed conveying the west half of the N. E. ¼ of sec. 26 to J. R. Moore. This deed recites a consideration of $480. Testifying as to why he executed this deed to J. R. Moore, the witness said:

"Q. Why did you make that deed to west 80 acres to J. R. Moore? A. I was owing him on the land and he was wanting his money and I couldn't pay him and he said he would take the land and I just deeded it back to him. Q. You did deed 80 acres to him and he gave you a release to the other 80 acres of land? A. Yes, sir. Q. And released you? A. Yes, sir. Q. You were still owing the balance on the N. E. ¼? A. Yes, sir. Q. And finished paying that balance by deeding the other 80 acres, that is, the west 80 acres, to J. R. Moore? A. Yes, sir; he gave me the note and mortgage."

The release of the mortgage thus secured is as follows:

"The debt secured by a mortgage executed by S. G. Moore to J. R. Moore on the 3rd day of May, 1910, upon the following described real estate in Stephens county, state of Oklahoma, to wit: The northeast quarter of section twenty-six (26) township two (2) south and range four (4) west, and recorded in mortgage record No. ——page of —— of Stephens county, in the state of Oklahoma, having been fully paid, such mortgage is hereby declared satisfied and released this 13th day of Oct. 1910. J. R. Moore."

The witness testified, further, that the deed executed by him to E. T. Dunn conveying the east 80, and the deed to J. R. Moore conveying the west 80, and the release of the mortgage were all executed at the same time and place and in the office of Stotts, the notary public, before whom the instruments were acknowledged; the instruments show that they were all executed the same date and acknowledged before the same notary.

We have set out the evidence as to the transaction relating to these two deeds and the release of the mortgage somewhat at length for the reason that it is contended by plaintiff, that her land was sold together with the land of Johnson Douglas Moore, at what she terms a "hotchpotch sale", that is, a sale so coupled together that it cannot be said but that plaintiff's land was sold for the benefit of Johnson Douglas Moore, and for the further reason that it is claimed that E. T. Dunn had notice of the manner in which the mortgage was handled and the sale conducted. We will consider first the evidence of plaintiff, as concerning the title to the west 80 acres of her land, which the evidence clearly shows was deeded back to J. R. Moore in consideration of the return of the note given by S. G. Moore, representing the balance of the purchase price. We think the record clearly shows that the purchaser, S. G. Moore, and the guardian treated the entire cash payment of $500 as having been made on the land of Johnson Douglas Moore, that is, the N. W. ¼ of sec. 26, since the only payment made by the purchaser except the $500 cash payment was the sum of $662.13 made on the 12th day of October, 1910, the day the partial release of the mortgage was executed, and this sum, together with the $500 cash payment, was the exact amount of the purchase price of the N. W. ¼, including interest. That left all the purchase price of plaintiff's land unpaid. The balance due on the note then must have been for the purchase price of plaintiff's land. In order to secure the return of this note to the purchaser, J. R. Moore and S. G. Moore, or one of them, procured E. T. Dunn to purchase the east 80 acres and pay therefor the sum

of $480, which was paid to J. R. Moore. This was not sufficient to procure the surrender of the note, and S. G. Moore thereupon conveyed the remaining 80 acres, the west 80, to J. R. Moore, and received therefor the return of the note and the complete release of the mortgage.

It is clear that the effect of this transaction was that the guardian took the deed for the west 80 acres and released the mortgage and paid nothing therefor except the surrender of the note in which only the estate of the plaintiff at that time could have had an interest, since the other minor had been paid in full for his land. In other words, J. R. Moore, the guardian, paid for the land with funds (the note) which belonged to plaintiff. We think that when he did so he must have taken title as trustee for plaintiff.

In 28 C. J. 1155, it is said:

"The general rule is that property purchased by a guardian with funds belonging to his ward's estate and the title to which is taken in the guardian's name will be impressed with a trust in favor of the ward, and that the guardian acquires no beneficial interest in the property. Where land is purchased with funds of the ward he is entitled to assert a right of election between the fund thus appropriated and the land thus purchased and paid for. The ward may either pursue the guardian personally or resort to the property purchased with his money."

In Haynes v. Montgomery, 96 Ark. 573, 132 S. W. 651, it was held:

"The rule forbidding a trustee from taking a position inconsistent with his duty as trustee, and declaring that, if a trustee acquires an interest in the trust property, he holds it as trustee for the beneficiary, applies to a guardian and ward, and during the guardianship relation transactions between the guardian and ward will not be permitted to stand.

"The right to set aside a purchase of trust property by the trustee does not depend on the unfairness of the transaction, but the beneficiary may have the purchase set aside without showing actual fraud."

In that case the land was not purchased directly with funds of the ward, as here.

In Thompson v. Hartline, 105 Ala. 263, 16 So. 711, it was held:

"Where a guardian purchases land in his own name with the funds of his ward, a resulting trust is imposed thereon in favor of the ward, with the right, at her election, to call for a conveyance of the land to herself, or to have it subjected to sale for her reimbursement.

"A bill filed by the ward immediately after attaining her majority to subject the land is filed in time.

"The fact that a ward can sue at law to recover funds used by her guardian in the purchase of land in his own name does not defeat her right to enforce a resulting trust in such land."

In Johnston v. Jones, 48 Ga. 554, it was held:

"If a guardian purchase land, intending to receive a promissory note on other parties, from an administrator in whose hands is the estate in which his ward has a share, and to pay for the land with such note, the consideration of which, is the purchase money of the same land when sold by the administrator, and he does receive the note from the administrator as the portion of the ward in said estate, and pays the whole price of the land with it, and takes the title to himself, it will so charge the land as a trust in the hands of the guardian, and his vendee who purchases with notice of such facts, as to entitle the ward through her next friend to assert her right of election between the fund thus appropriated, and the land thus purchased and paid for."

See, also, Robinson et al. v. Robinson et al., 22 Iowa, 427.

It will thus be seen that the land when repurchased by the guardian and title taken in his own name, was impressed with a trust in favor of plaintiff, and that upon coming of age she had the right to elect whether to sue for the land or to sue the guardian upon his bond for the fund thus wrongfully appropriated.

Now as to sufficiency of the evidence as to notice to subsequent purchasers from J. R. Moore. In Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, it was held:

"One who purchases land with knowledge of such facts, as would put a prudent man upon inquiry, which if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

In Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468, it was said:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would,

if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it."

In Winstead v. Shank et al., 68 Okla. 269, 173 Pac. 1041, this court held:

"A purchaser, or incumbrancer, from the vendee of a guardian's sale, with notice of such fraud as renders the sale void, is not an innocent purchaser, even though he pays a valuable consideration. The essential elements which constitute a 'bona fide purchase' are valuable consideration, absence of notice, and the presence of good faith.

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

These authorities were all cited and quoted with approval in Gay et al. v. Williams, 102 Okla. 37, 226 Pac. 88.

The decree of sale in part is:

"It is therefore adjudged and decreed by the court that the said Joseph R. Moore as guardian of the estate of said above-named wards be and is hereby authorized and directed to sell in one parcel or in separate parcels or subdivisions as the said guardian shall judge most beneficial to said estate at private sale to the highest bidder, the following described real estate, to wit: The N. E. ¼ of sec. 26, twp. 2 S., R. 4, west I. M. belonging to Robbie A. Moore, and the N. W. ¼ of sec. 26, twp. 2 S., R. 4, west I. M. belonging to Johnson Douglas Moore, on the following terms, to wit: $500 cash in hand and balance due in 60 days, secured by first mortgage on the real estate sold."

The notice of sale as published was:

"Notice is hereby given in pursuance of an order of the county court of the county of Stephens, state of Oklahoma, made on the 2nd day of April, 1910, the undersigned guardian of the estate of Robbie A. Moore et al., minors, will sell at Duncan, Okla., to the highest bidder, subject to confirmation by said court on the 23rd day of April, A. D. 1910, at 1 o'clock a. m., at private sale, all the right, title and interest 'of said minors, in and to the following described real estate situate in Stephens county, state of Oklahoma, to wit: N. E. ¼ of sec. 26, twp. 2 S., R. 4 W. I. M. belonging to Robbie A. Moore, and the N. W. ¼ of sec. 26, twp. 2 S., R. 4 W. I. M. belonging to Johnson Douglas Moore. Said real estate will be sold on the following terms and, conditions,

to wit: $500 cash in hand balance due in 60 days evidenced by note secured by first mortgage on land sold. Bids for the purchase thereof must be in writing and must be filed in the county court or delivered to the undersigned at Dixie, Okla.

"Dated the 2nd day of April, 1910. Joseph R. Moore."

The bid upon which the land was sold was as follows:

"Duncan, Okla. April 23, 1910. J. R. Moore, Gdn. of Robbie A. Moore and Johnson Douglas Moore. Dixie, Okla. Dear Sir: I do hereby bid the sum of $960 for the northeast quarter of section twenty-six (26) twp. 2 south of range 4 west. Being a part of the allotment of Robbie A. Moore, and I do hereby bid the sum of $1,120 for the northwest quarter of section twenty-six (26) twp. 2 south of range 4 west. Being a port of the allotment of Johnson Douglas Moore. Yours truly, S. G. Moore."

The return of sale made by the guardian showed that he sold the real estate, to wit:

"The N. E. ¼ of sec. 26, twp. 2 S. R., 4 west in Stephens county, Oklahoma, being part of the allotment of Robbie A. Moore, and the N. W. ¼ of sec. 26, twp. 2 S., R. 4 west, in Stephens county, being part of the allotment of Johnson Douglas Moore, that he sold the first tract for the sum of $960, and the second described tract for the sum of $1,120, on the following terms, to wit: $500 cash in hand and balance on 60 days time to be secured by first mortgage on the premises sold to S. G. Moore."

The order confirming the sale, omitting the formal part, is:

"* * * The court having examined said return, and having heard and considered the evidence of witnesses offered in support of said return, and being fully advised in the premises finds: That in pursuance of said order of sale, said Joseph R. Moore as said guardian on the 23 day of April, 1910, sold the portion of the real estate of said estate described as follows, to wit: The N. E. ¼ of sec. 26, twp. 2 S., R. 4 west, belonging to Robbie A. Moore at private sale for the sum of $960, and the N. W. ¼ of sec. 26, twp. 2 S., R. 4 west belonging to Johnson Douglas Moore to S. G. Moore at private sale for $1,120, on the following terms; $500 cash in hand, and balance secured by first mortgage on land sold, due in 60 days from the date hereof. That said sale was made after due notice as prescribed by said order of sale; that said purchaser was the highest bidder therefor, and said sum the highest and best sum bid; that said sale was legally made and fairly conducted; that said sum is not disproportionate to the

value of the property sold, and that a sum exceeding such bid at least ten (10) per cent. exclusive of the expenses of a new sale cannot be obtained, and that the said Joseph R. Moore in all things proceeded and conducted and managed such sale as required by the statute in such case made and provided, and as by said order of sale required and directed.

"It is therefore ordered, adjudged and decreed by the court, that the said sale be, and the same is hereby confirmed and approved and declared valid, and the said Joseph R. Moore is directed to execute to said purchaser proper and legal conveyance of said real estate."

Subsequent purchasers must take notice of the petition of the guardian to sell, the order or decree of sale and the order confirming the sale, together with all facts they disclose, and if sufficient appears therein to put a reasonably prudent man on inquiry, which would if prosecuted with ordinary diligence lead to actual notice of a right or title in conflict with that he was about to purchase, and he fails to make such inquiry, he is charged with actual notice he would have received if he had made it. It is clear that these portions of the record contain enough to excite the attention and put a reasonably prudent person on guard, and call for inquiry as to how J. R. Moore, the guardian, obtained the title to any part of plaintiff's land. We think, then, the trial court erred in sustaining the demurrer to the evidence as to the west 80 acres.

In view of the necessity for a new trial, and realizing that the evidence may be different at such retrial, we express no opinion as to the sufficiency of plaintiff's evidence as to the east 80 acres.

The judgment should be reversed, and the cause remanded, with direction to grant a new trial.

BENNETT, JEFFREY, HALL, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 1155, §266. (2) 28 C. J. p. 1155, §266; 12 R. C. L. p. 1171; (3) 39 Cyc. pp. 1713, 1714; 27 R. C. L. p. 715. (4) 29 Cyc. p. 1114; 20 R. C. L. p. 346.