V. E. ATKINSON, Jr., as Executor of the Estate of V. E. Atkinson, Deceased, and V. E. Atkinson, Jr., and W. B. Atkinson, Plaintiffs in Error,

v.

Ardis Ruth Nott Beasley BARR and Lou Nott, Defendants in Error.

No. 41449.

Supreme Court of Oklahoma.

April 25, 1967.

Carl Pinkerton, James C. Pinkerton, Tulsa, for plaintiffs in error.

Font L. Allen, F. C. Swindell, Tulsa, for defendants in error.

DAVISON, Justice.

This is an appeal by V. E. Atkinson, Jr., Executor of the Estate of V. E. Atkinson, Deceased, and V. E. Atkinson, Jr., and W. B. Atkinson (defendants) from a judgment whereby the whole title to a residence property located in Tulsa, Oklahoma, was quieted in Ardis Ruth Nott Beasley Barr and Lou Nott (plaintiffs below).

V. E. (Vinnin Edward) Atkinson (the above deceased) and Annette Atkinson were married in 1934. No children were born of this marriage. The defendants V. E. Atkinson, Jr., and W. B. Atkinson are the sons of V. E. Atkinson by a prior marriage. The plaintiff Ardis Barr and one Curtis Nott were children of Annette Atkinson by a prior marriage. Curtis Nott died and left his wife, Lou Nott, and his sister, Ardis Barr, as his heirs. We will refer to the parties by name or by their trial court designation.

The question presented is whether under the circumstances and law, the sons of Vinnin own all or a lesser interest in the property, or whether the children of Annette own all or a lesser interest in the property. Plaintiffs based their claim of total ownership upon certain hereinafter described deeds. Defendants claim total ownership by reason of alleged contractual wills made by Vinnin and Annette and ask for specific performance, but contend if this contention fails then they are entitled to a one-third interest that was acquired by their father (Vinnin) by inheritance from Annette.

There is little, if any, dispute as to the facts. In about August, 1942, Annette came to Tulsa, Oklahoma, from West Virginia and worked in, or operated, a beauty shop in the Tulsa Hotel. On November 17, 1942, Annette bought the subject property and took title in her name. It appears she bought the property with her funds. About three months later Vinnin came to Tulsa and they lived in and occupied the property as their homestead. Annette operated a beauty shop in the Tulsa Hotel for about 3 or 4 years and then operated a shop in the property until her death on April 25, 1951. It

appears that Vinnin was regularly employed during this period at "Brown-Dunkin" in some undisclosed capacity.

On August 23, 1948, Vinnin and Annette executed separate wills. Vinnin's will is a one sheet hand-written instrument, in which he named Annette as his sole beneficiary and expressly disinherited his children. Annette's will was lost, but it was alleged that it was identical to Vinnin's except that it named Vinnin as sole beneficiary and expressly disinherited her children. We will assume this is true.

For a period of about 6 weeks, beginning in August, 1949, Vinnin stayed in a hotel in Tulsa. The reason for this separation was not shown, but it is assumed it resulted from a spat between Vinnin and Annette. On August 12, 1949, Vinnin conveyed the property to Annette by quit-claim deed and on August 17, 1949, Annette (alone) conveyed the property to her children, Ardis Beasley (now Barr) and Curtis Nott, by warranty deed. These deeds were delivered by Annette to Ardis, but were not recorded until April 27, 1951, two days after Annette died. After this temporary separation Vinnin returned and both he and Annette occupied the property as their homestead to the date of her death.

After Annette died her will could not be found and Vinnin petitioned the county court to probate her lost will. The county court denied probate of the lost will because it was not proved the will was in existence at the time of Annette's death. 58 O.S.1961, § 82. The county court appointed Vinnin administrator and found the property was the homestead and set it aside as such to Vinnin's use. In the meantime Vinnin had filed a suit in the District Court of Tulsa County against Ardis Beasley (now Barr) and Curtis Nott presenting the issue that the wills were contractual and he (Vinnin) owned the entire title to the property. The county court entered a final decree in the estate recognizing Vinnin had filed the above suit contending he owned the property by reason of a contract with Annette and finding that the property was a homestead,

that Annette died intestate leaving Vinnin, Ardis and Curtis as her heirs and each was entitled to take a one-third interest in whatever title Annette may have in the homestead property.

Vinnin continued to live in the property until his death on December 16, 1963. His later will was probated and whatever interest he had in the property was awarded to V. E. Atkinson, Jr., and W. B. Atkinson.

On April 8, 1964, Ardis Barr and Lou Nott filed the present action. The earlier suit filed by Vinnin was consolidated with the present suit for disposition. The trial court made extensive findings of fact in which were incorporated the matters and events herein narrated. The trial court found that the property was at all times the homestead of Vinnin and Annette and concluded as a matter of law that the warranty deed, dated August 17, 1949, from Annette to her children Ardis Beasley (now Barr) and Curtis Nott was void because it did not bear the signature of Vinnin as required by 16 O.S.1961, § 4. The court further concluded as a matter of law that when Vinnin executed and delivered to Annette the quit-claim deed of August 12, 1949, it was his intent to convey to Annette any and all right, title and interest he might have in the property, except his homestead right. From this the court concluded as a matter of law that Ardis Beasley (Barr) and Curtis Nott acquired the property subject to Vinnin's homestead right, not because of the warranty deed, but because they were heirs of Annette. The trial court made no conclusion as to whether the wills of Vinnin and Annette, dated August 23, 1948, were or were not contractual, but did conclude that when Vinnin gave the quit-claim deed to Annette, he intended to divest himself of any interest in the property, other than his homestead interest, "the contractual wills notwithstanding, if in fact there were contractual wills" and "assuming for the purpose of argument there were contractual wills."

As above stated, only the defendants Atkinson appealed from the adverse judgment.

Preliminary to a determination of the propositions presented by defendants, we will first dispose of a contention of plaintiffs that was first made in oral argument to this court. Plaintiffs question the correctness of the trial court's conclusion that the warranty deed from Annette to Ardis and Curtis was void.

The evidence clearly showed the property was the homestead of Vinnin and Annette. Vinnin did not sign the warranty deed. Title 16, O.S.1961, § 4, provides in part as follows:

" * * * and no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one (1) year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced, or legally separated, except to the extent hereinafter provided. * * * "

This statute was enacted pursuant to Oklahoma Constitution, Art. 12, § 2, providing that no conveyance of the homestead shall be made without the consent of his or her spouse, given in such manner as may be prescribed by law.

■ It is well established in this State that a homestead estate, whether legal or equitable, cannot be alienated by the owner, if married, unless his or her spouse joins in the instrument of conveyance or assignment, and the attempted conveyance without such joinder is void. Montgomery v. Wise, 179 Okl. 247, 62 P.2d 647; Standard Savings & Loan Ass'n v. Acton, 178 Okl. 400, 63 P.2d 15; Keel v. Jones, Okl., 413 P.2d 549.

It appears to be conceded or assumed that the warranty deed in question was executed and delivered during the 6 week period when Vinnin was temporarily staying in a Tulsa hotel. Our statute, 16 O.S.1961, § 6, permits the husband or wife, where the other spouse has voluntarily abandoned him or her for a period of one year, or takes up a residence in another state for a period of one year, to convey, mortgage or make contracts relating to the homestead without joinder of the absent spouse.

In In re Carothers' Estate, 196 Okl. 640, 167 P.2d 899, 902, this court, after reference to our constitutional provision and statute, supra, stated in pertinent part as follows:

"Under these constitutional and statutory provisions we have held that any attempted conveyance or mortgage of the homestead by one spouse, where the other * * * has not deserted the other spouse for a period of a year, or taken up a residence in another state, is absolutely void and conveys no interest in the homestead. (Citing cases)"

Plaintiffs cite Christie v. Thompson, 88 Okl. 85, 211 P. 513, for the proposition that only Vinnin, as the non-signing spouse, could question the validity of the warranty deed and the defendants did not have this right. The decision is not applicable because the deed in that case was executed before statehood and the statute then in force (Section 883, Wilson's Revised and Annotated Statutes 1903) expressly provided that the spouse executing the deed to the homestead should be concluded thereby, and that such deed may be avoided only by the spouse who had not executed the deed. This statute was not extended in force after statehood. The present applicable provisions of the constitution and statutes and the decisions construing them are those above set out. It is clear that the defendants, as successors to Vinnin's rights in the property, could apply the present law to show the warranty deed was invalid and void.

■ It is our conclusion that the warranty deed was void because Vinnin did not sign it and such conclusion by the trial court was correct.

Defendants Atkinson contend that they are at least entitled to a one-third interest in the property and that the quit-claim deed from Vinnin to Annette under the evidence and law did not and could not be construed to deprive Vinnin of the interest he would inherit from Annette.

In determining this contention we must consider the rules of law applicable to the situation reflected by the record.

The quit-claim deed is substantially in the form provided by 16 O.S.1961, § 41, and as such conveys all the right, title and interest of the maker thereof in and to the premises therein described. 16 O.S.1961, § 18.

A quit-claim deed conveys only such interest and title as the grantor owned at the time of the execution of the deed (May v. Archer, Okl., 302 P.2d 768, and First Nat. Bank & Trust Co. of Tulsa v. Price, 204 Okl. 243, 228 P.2d 623), and does not convey a subsequently acquired title (Selsor-Badley v. Reed, 97 Okl. 204, 223 P. 651), and conveys only such interest in the property as the grantor actually owns, if any, and grantor thereby does not covenant to convey perfect title (Schuman v. McLain, 177 Okl. 576, 61 P.2d 226).

The trial court was required to use the above rules of law in determining the legal effect of the quit-claim deed. It therefore appears that the trial court must have considered the quit-claim deed as being a part of an agreement between Vinnin and Annette reflecting an "intent" by Vinnin to divest himself of all interest in the property, except his homestead interest. In the present situation this would constitute a post-nuptial agreement. With no consideration of the question of whether the evidence was sufficient to establish such an agreement, we will determine defendants' right to a one-third interest on the basis of the legal effect of such agreement in the present circumstances.

The trial court held that the warranty deed from Annette to her children was void, and we affirmed, supra. Therefore, Annette was the owner of the property at the time of her death. In the probate of Annette's estate the county court found she died intestate and that Vinnin was entitled to a one-third and her children (Ardis and Curtis) a two-thirds interest in whatever title she had in the homestead property, but made no determination of this interest because of the lawsuit pending between these parties, supra.

The property was acquired during coverture, and the applicable portion of 84 O.S. 1961, § 213, is as follows:

"When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner:

"First. * * * If the decedent leave a surviving husband or wife, and more than one child living, * * * one-third to the surviving husband or wife, and the remainder in equal shares to his children, * * *"

Title 84 O.S.1941, § 44, provides in part as follows:

"Every estate in property may be disposed of by will; provided however, that a will shall be subservient to any antenuptial marriage contract in writing; but no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law; * * *"

Said Section 44 is known as the "forced heir statute."

The judgment of the lower court has, in effect, found from the existence of the quit-claim deed and the circumstances under which it was given that Vinnin had effectively parted with or contracted away his right to inherit from Annette that interest in her real property to which he was entitled under the statute as a forced heir. Vinnin had personally filed the earlier action (consolidated with plaintiffs' later suit) in which he claimed he owned all of the title to the property.

In Crane v. Howard, 206 Okl. 278, 243 P.2d 998, the spouses had entered into a post-nuptial agreement whereby each had the right to deal with their separate property as though there was no marriage, and each waived all right to inherit the property of the other. In applying Section 44, supra, we stated:

"A postnuptial agreement of husband and wife not to dissent from the will of

the other, and waiving the right of the husband or wife to take of the other's estate under the law of intestate succession, is not authorized by statute and is invalid and unenforceable."

In Little v. Cunningham, Okl., 381 P.2d 144, we held:

"A husband and wife cannot, by contract to make a conjoint will, and by the making of such will in pursuance thereto, nullify the provisions of 84 O.S.1961, Sec. 44, known as the 'forced heir statute.'"

And in In re Blaydes' Estate, 202 Okl. 558, 216 P.2d 277, 280, it is stated:

"A surviving spouse has no actual interest in the property of her spouse until the death of the latter and therefore has no existing right which she can dispose of by contract. Some courts hold that an election may be made prior to the death of the spouse but we think the sounder rule is that such cannot be done. To hold otherwise would be to say that the parties can do indirectly what the statute prohibits. * * *"

■ It is our conclusion the lower court erred in finding that the quit-claim deed had the effect of depriving Vinnin of any right to inherit an interest in the property. It is our further conclusion that Vinnin inherited from Annette a one-third interest in the property. In arriving at this conclusion we have excluded from our discussion and consideration the question of whether the final decree in Annette's estate established Vinnin's right to a one-third interest by reason of res judicata.

Defendants Atkinson further contend the wills made by Vinnin and Annette on August 23, 1948, were contractual and irrevocable and that Vinnin acquired all of the title to the property.

As heretofore stated, the will of Vinnin left all of his property to Annette and expressly excluded his children, and the will of Annette left all of her property to Vinnin and expressly excluded her children. The wills do not refer to each other and there is a complete absence of any words of contract. There is no testimony of statements by either that the wills were made pursuant to agreement. The county court found that Annette had made a will but denied probate because of lack of proof that it was in existence at or after her death.

The defendants are asking for specific performance of a claimed contract. This requires a determination of whether the proof establishes a contract.

Our statute, 84 O.S.1961, § 52, states that "A conjoint or mutual will is valid, but it may be revoked by any of the testators in like manner with any other will." By reason of such statute the contract of the parties must be shown to be binding and irrevocable.

■ In Loflin v. Capps, Okl., 327 P.2d 443, it is stated:

"Mere execution of mutual wills has no tendency to show that there is a contractual obligation to make such wills."

See also Horton v. Cronley, Okl., 270 P. 2d 306.

Since the present wills or instruments are not proof of the existence of the contract, the contract must necessarily be proved by other evidence. The nature and sufficiency of such evidence has variously been defined by this court.

In Coffey v. Price, Okl., 380 P.2d 537, we held that in order to attribute the quality of irrevocability to a joint will, the beneficiary making such claim has the burden to make affirmative proof of the existence of the contract, either by indisputable evidence or by the terms of the will itself.

■ In Horton v. Cronley, supra, we stated:

"Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear and forcible as to leave no reasonable doubt as to its terms and conditions."

We direct attention to Paull v. Earlywine, 195 Okl. 486, 159 P.2d 556, for a statement

and discussion of the above legal propositions.

The defendants contend that the circumstances show the existence of a contract. They argue, inter alia, that the execution of mutual wills, the fact that Annette was 20 years younger than Vinnin, that each would only inherit one-third of the other's property, that Annette would have benefited from his social security payments, and his savings, and that he had a homestead right in the property, is proof of the contract. The effect of mutual wills has been discussed. The difference in ages and Annette's lack of personal social security benefits does not appear in the record. Even if the record disclosed the difference in ages, such fact would not meet the test of proving the existence of a contract.

Defendants rely mainly on Wilson v. Starbuck, 116 W.Va. 554, 182 S.E. 539, 102 A.L.R. 485, as presenting a similar situation. The case is not applicable for the reason that, contrary to our statute and decisions, the opinion follows what it admits is the minority view, that reciprocal provisions of a will are prima facie evidence of a contractual relationship between the makers.

The circumstances urged by defendants show no more than a possible resulting benefit if the testators had entered into a contract, but do not prove a contract. The evidence here reflects no more than to show Vinnin and Annette were of the same mind to make each the beneficiary of the other in their separate wills. There is nothing in the wills themselves or the record to show contractual intentions on the part of either.

It is our conclusion that defendants must fail in their contentions that there was an enforceable contract between Vinnin and Annette. Defendants are limited to a one-third interest in the property.

The lower court is directed to render judgment accordingly.

Defendants advise this court that the plaintiffs have been in possession of the property during the pendency of this appeal and ask that we direct an accounting of rentals. This is a matter for application, and determination by the lower court.

Affirmed in part and reversed in part.

All the Justices concur.