1999 OK CIV APP 31

**Allene LIMB, Plaintiff/Appellant,**

v.

**Ellis D. ALDRIDGE and Carmaleta Aldridge, husband and wife, Defendants/Appellees,**

Virgil E. Limb and Marilyn R. Limb, husband and wife, and John W. Smith and Elva L. Smith, husband and wife, Defendants.

**No. 91,457.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 16, 1998.

Rehearing Denied Nov. 9, 1998.

Certiorari Denied March 4, 1999.

---

J. Roger Henson, Shawnee, Oklahoma, for Plaintiff/Appellant.

Richard E. Butner, Wewoka, Oklahoma, for Defendants/Appellees.

## OPINION

CARL B. JONES, Vice–Chief Judge:

¶ 1 Virgil R. Limb executed a document creating the "Limb Revocable Living Trust" [the Trust] in April, 1994, designating himself as trustee. The two named beneficiaries were his children by a former marriage, Virgil E. Limb and Elva Smith. (For purposes of clarity, the elder Limb will be referred to as "Father" and the younger as "Son." Elva Smith will be referred to as "Daughter.") Father transferred all of his real and personal property to Trust: his checking account, a small insurance policy, some stocks and bonds, and a car. Most important for the present case, Father included two small parcels of property as part of the trust corpus.

About three weeks later, Father and Allene (Appellant) joined in a quitclaim deed of both parcels to Father as trustee of the Trust.

¶2 Father died in February, 1995. Daughter then became successor trustee of the Trust. In April, 1995, Daughter as trustee conveyed the property by quitclaim deed to herself and Son as tenants in common. Daughter and Son subsequently filed record instruments disclaiming any beneficial interest under the Trust.

¶3 In December, 1996, Daughter and Son (and their spouses) joined in a sale of the residential property by warranty deed to Appellees Ellis and Carmaleta Aldridge. Thereafter, Appellant commenced this action against the Aldridges and Daughter and Son pleading claims for (1) quiet title, (2) money had and received, (3) assumpsit,[1] (4) unjust enrichment, and (5) equitable accounting. All parties moved for summary judgment. *The filed judgment presently before this Court relates only to Appellants' claims against the Appellees.*[2] In that judgment, the trial court concluded that Appellees were bona fide purchasers without notice of any adverse claim to the property, and Appellant had no rights to the residential property.

■ ¶4 A "living trust" is not specifically defined by statute in Oklahoma,[3] but has been elsewhere. *See, e.g.,* Wis.Stat.Ann. §§ 701.01, 701.07. Generally speaking, a "living trust" is a trust which takes effect during the life of the settlor, as distinguished from a testamentary trust which is created upon the settlor's death. In the last two decades, a revocable living trust in which the trustor declares himself trustee and also sole beneficiary of the trust income during his life has been widely promoted as a "will substitute" which purports to avoid the time and expense of probate.[4]

■ ¶5 In her response to the Appellees' motion for summary judgment, and in her own cross-motion, Appellant challenged the trust Father created because Father was settlor, sole trustee, and sole beneficiary during his life. She cited treatise authority and caselaw that, in the absence of an effective separation of legal and beneficial interests in the trust property, a trust would not arise. She also argued that the trust was "illusory" for that reason. Appellees offered treatise authority in reply to support their contention that revocable living trusts are now an accepted form of trust.

¶6 In some of the cases cited by Appellant, the court's opinion turned on intent by the settlor to defeat either the claims of creditors or the rights of his spouse. *See, e.g., Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966 (1937) (so he could avoid the effect of community property laws, settlor placed all of his property in trust, reserving a life estate, power of revocation, and control over trust assets). *Newman* was cited in *Thomas v. Bank of Oklahoma,* N. A., 1984 OK 41, 684 P.2d 553, in which the court decided that a wife, not her bank co-trustee, held title to separate, inherited property which she had placed in trust, and that, because the wife retained control over disposition of the trust property, the property should be included in her estate and therefore subject to the husband's right to marital election under 84 O.S.1981 § 44.

¶7 The difference between *Thomas* and the present case is the additional fact of the quitclaim deed which Appellant and Father executed to the Trust. We do not agree with Appellant that the Trust was illusory merely because Father was the sole trustee and sole beneficiary during his life. And, unlike in *Newman,* there is no suggestion in the rec-

---

1. Appellant identified claims (2) and (3) as also being for creation of a "constructive trust."

2. In the record journal entry, the trial court expressly found that the judgment, which it directed to be entered in Appellees' favor, disposed of all claims against Appellees "and [that] there is no just reason for delay in filing the judgment in [their] favor ..." *See* 12 O.S.Supp.1995 § 994(A).

3. The only explicit reference to living trusts in the Oklahoma Statutes is their exclusion from the Uniform Simultaneous Death Act. 58 O.S. 1991 § 1006.

4. *Weber v. Langholz,* 39 Cal.App.4th 1578, 46 Cal.Rptr.2d 677, 680; *In re Estate of Pozarny,* 177 Misc.2d 752, 677 N.Y.S.2d 714 (N.Y.Sur. 1998); *see also* Nilsson, *Can Living Trusts Defeat Elective Share?,* 70 Fla. B .J. 34, 34 (Oct.1996).

ord before us that Father intended by creating the Trust to defeat Appellant's rights or to hide assets from his creditors.

¶ 8 The validity and legal effect of revocable, "self-trusteed" living trusts has been discussed in only a few cases. The Colorado Court of Appeals has held that a revocable living trust is valid even though the settlor names himself as trustee, *and* reserves the trust income for life, the right to withdraw any portion of the trust property, and the right to alter, amend, or revoke the trust, *and* retains exclusive control over the administration of trust assets. *In re Estate of Brenner*, 37 Colo.App. 271, 547 P.2d 938, 941–42 (1976), *cert. denied;* `see Oken` *v. Hammer*, 791 P.2d 9, 11 (Colo.Ct.App.1990).[5] In *Friedberg v. Sunbank/ Miami, N. A.*, 648 So.2d 204 (Fla.App.1994), the court found that settlor had created a valid revocable living trust which prevailed over his widow's right to elective share of her husband's estate.[6] Although the case law is scant, the prevailing view thus appears to be that the merger doctrine will not apply so long as the settlor has designated some beneficiary, even a contingent beneficiary, other than himself.

*See, e.g., In re Application of Sackler*, 145 Misc.2d 950, 548 N.Y.S.2d 866, 869 (1989).[7]

¶ 9 Therefore, we hold that the trial court was correct when it decided that a valid trust had been created. It follows that, when Appellant joined with Father to convey property to the Trust, she conveyed whatever interest she had in the property. A quitclaim deed made in compliance with the conveyancing statutes conveys all right, title, and interest of the grantor. 16 O.S.1991 § 18; *see Atkinson v. Barr*, 1967 OK 103, ¶ 22, 428 P.2d 316, 320. Nowhere has Appellant offered any evidence to suggest that the quitclaim deed was not a binding conveyance.

¶ 10 In order to obtain the status of a bona fide purchaser of land, one must (1) pay valuable consideration, (2) act in good faith, (3) not intend to take advantage of third parties, and (4) not have actual or constructive notice of the outstanding rights of others. *Luschen v. Stanton*, 192 Okla. 454, 137 P.2d 567, 569 (1943); *see Eckel v. Adair*, 1984 OK 867 ¶ 7 n. 13, 698 P.2d 921, 924. A person presented with sufficient facts to put him on inquiry will be held to have actual notice of whatever a reasonable inqui-

5. In *Estate of Pozarny, supra* note 4, the Surrogate Court of New York construed former law in effect when the trust was created, which statute was almost identical to 60 O.S.1991 § 175.4, and held that, even if the merger doctrine applied to a revocable living trust where the settlor created for himself a life interest in income from the trust corpus, it would not defeat the trust when there were designated beneficiaries other than the settlor. In such a case, the beneficiaries would have present interests in the estate granted to the trustee, notwithstanding the fact that those interests were revocable and contingent until the settlor died. The settlor's legal interest would be of the same quality and duration as his beneficial interest, i.e., a legal life estate for the settlor, followed by a remainder interest. *Id.*, p. 5. "There is a successive and different beneficiary ... who receives the assets on the settlor's death, assuming that the settlor had not entirely expended them or revoked the trust during his lifetime. We cannot agree with the ... contention that merger renders the entire trust invalid. We must give effect to the separable property interest (remainder interest) in the petitioner, as it is set forth and conditioned by the terms of the [trust] instrument." *Id.*, p. 6.

Section 175.4 provides:

"Every person who, by virtue of any transfer or devise, is entitled to the actual possession of real property, and the receipts of the rents and profits thereof, is deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his beneficial interest."

New York's statute was amended in 1997 to provide that a trust is neither merged nor invalidated because some person, including the settlor, is or may become the sole trustee and sole holder of a present beneficial interest, so long as at least one other person has a beneficial interest. N.Y. Estates, Powers, and Trusts Law § 7–1.1 (McKinney 1997). Oklahoma has not enacted a similar amendment.

6. Recognizing that the right to devise property is a right of constitutional dimension, the Florida court, which had requested and received an amicus brief from the Family Law, Tax Law, and Elder Law Section of the Florida Bar Association, quoted an excerpt from the amicus brief, that a person has "a constitutional right to be a mean-spirited, no good curmudgeon," even if his estate plan excludes his loving, devoted spouse. *Friedberg*, 648 So.2d at 206; *see* Nilsson, *supra* note 4, 70 Fla.B.J. at 34.

7. *See also* Barnosky, *The Incredible Revocable Living Trust*, 10 J. Suffolk Acad. L. 1, 8–9 (1995).

ry might have disclosed. *Jonas v. Dunn*, 132 Okla. 204, 270 P. 46, 51 (1928).

¶ 11  There is no evidence in the record that Appellees had notice of any claim against or interest in the property on the part of Appellant. The attorney who examined the abstract and property records mentioned the quitclaim deed from Appellant and Father, and the subsequent instruments from Son and Daughter conveying their beneficial (remainder) interest to Daughter as successor trustee. He only required filing of a memorandum of trust to supplement the other instruments of record. Appellees submitted their joint affidavit that (a) Appellant was not living in the house they bought; (b) there was no indication from the home itself or its contents that Appellant might claim an interest in it; (c) they were not told anything by the realtor or by Daughter and Son, either during negotiations or at closing, which suggested Appellant had or claimed an interest; (d) before commencement of the present action, they knew of nothing that would suggest Appellant claimed an interest; and (e) they had to sell their old house to buy the one in Seminole, and would never have done that if they had known Appellant claimed an interest in it. Appellant did not respond to Appellees' contention that they were bona fide purchasers.

¶ 12  We hold that Appellees, as bona fide purchasers for value, without notice of any claim by Appellant, were entitled to the benefit of the conveyance from Daughter and Son. We therefore conclude that the trial court correctly entered summary judgment in favor of Appellees. The judgment below is AFFIRMED.

JOPLIN, P.J. and GARRETT, J., concur.

