2001 OK CIV APP 40

Ella Jean TAYLOR, Plaintiff/Appellee,

v.

The HEIRS, Executors, Administrators, Trustees, Devisees, Successors and Assigns, immediate and remote, of J.J. Johnson and Nettie Johnson; Sam Bradley, Creek Indian Roll 1067, Celina Davis, aka Selina Davis, Creek Indian, Roll No. 1065, and Lewis Bradley, Creek Indian Roll No. 1066, Defendants/Appellants,

and

Charley W. Condren, Jr. and Betty A. Condren, Intervenors/Appellees.

No. 94,432.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 9, 2001.

Douglas L. Boyd, Douglas L. Boyd, Tulsa, OK, for Defendants/Appellants.

Bill Barksdale, Barksdale, Robinson & Wiemer, Okmulgee, OK, for Plaintiff/Appellee.

Donald W. Henson, Donald W. Henson, Okmulgee, OK, for Intervenors/Appellees.

HANSEN, Chief–Judge:

¶1 In 1947, J.J. Johnson and his wife Nettie purchased, as joint tenants, the subject 80 acre tract. J.J. died in 1955 and Nettie died in 1967, leaving six living children and the children of three deceased children. Ira Johnson, the last surviving child of J.J. and Nettie, had been in sole possession of the 80 acres since 1967. Ira died in 1996 leaving a will which devised the 80 acres to his wife, Evelyn. Evelyn then conveyed the 80 acres to her daughter and Ira's stepdaughter, Plaintiff, Ella Jean Taylor.

¶2 In 1997, Plaintiff listed the 80 acres with a real estate broker. The Intervenors, Charley W. Condren, Jr., and Betty A. Condren, entered into a contract with Plaintiff to buy the 80 acres. Intervenors had been told by the real estate broker that a probate had been completed and the subject property was owned by Plaintiff. Intervenors' property adjoined the subject 80 acres, and they lived on their property for more than forty years. Intervenor, Charley Condren, (Charley) knew the Johnson family, especially Tommy, J.J. and Nettie's son who predeceased Nettie. He also knew Tommy's children, including Leneta Dyer. However, he had not seen them for 20 or 25 years.

¶3 After the sale contract was executed, Charley telephoned Leneta Dyer. He asked her what the Johnson heirs were going to do with the property. She told him there were a lot of heirs, and as soon as the title was cleared, the heirs were going to sell it. Charley and Leneta discussed Plaintiff, and Leneta told him that Plaintiff had no legal right to sell the property. Charley did not tell Leneta he had signed a sale contract to purchase the property.

¶4 Thereafter, Intervenors requested that Mr. Inglish, an attorney, prepare a title opinion for them. The title opinion required a quiet title lawsuit to determine J.J. and Nettie's heirs. The title opinion mentioned the Ira Johnson probate and the deed to Plaintiff. The title opinion stated, "We don't know who Ira is nor why J.J. and Nettie Johnson never deeded out. The title is defective. Inquiry should be made concerning these matters and then a determination made as to how to correct the problem, most likely through a Title Suit." Mr. Inglish had no knowledge of the Nettie Johnson family.

¶5 Plaintiff directed Mr. Inglish to file a quiet title lawsuit.[1] Intervenors were not parties to the lawsuit. While the lawsuit was pending, Charley again telephoned Leneta, and they essentially repeated their earlier telephone conversation. Charley did not mention that Plaintiff had filed a quiet title action. Thereafter, the trial court quieted title in Plaintiff. After the completion of the lawsuit, Plaintiff and Intervenors closed the transaction.

¶6 Subsequently, Leneta, Homer Johnson, Chester Johnson and Jerry Johnson, the grandchildren of J.J. and Nettie Johnson, filed a motion to vacate the judgment which the trial court granted.[2] Intervenors were

1. Plaintiff signed a verified petition alleging she was the owner in fee simple of the subject 80 acres. She alleged that J.J. Johnson died before 1965 survived by his joint tenant Nettie Johnson and that Nettie died in 1966, leaving as her sole heir, her son Ira Johnson.

2. The trial court partially vacated the judgment. It vacated the judgment "except as it quiets the title to the subject land against the claims of the heirs, executors, administrators, trustees, devisees, successors and assigns, immediate and remote, of Sam Bradley, Creek Indian Roll No. 1067, Celina Davis a/k/a Selina Davis, Creek In-

allowed to intervene. The trial court conducted a hearing to determine the good faith purchaser status of Intervenors. After taking the matter under advisement, the trial court quieted title in Intervenors, determining Intervenors to be "bona fide purchasers of value," record owners in fee simple of the subject 80 acres. Defendants appeal this determination.

¶ 7 For their sole proposition of error, Defendants contend the trial court erred in finding Intervenors good faith purchasers pursuant to 12 O.S.2001 Supp. § 2004(C)(3)(f) which provides, in pertinent part:

f. A party against whom a default judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within three (3) years after the filing of the judgment or order, have the judgment or order set aside in the manner prescribed in Sections 1031.1 and 1033 of this title. . . . The title to any property which is the subject of and which passes to a purchaser in good faith by or in consequence of the judgment or order to be opened shall not be affected by any proceeding under this subparagraph. . . .

■ ¶ 8 Defendants argue initially that Intervenors did not obtain title to the subject property ". . . . by or in consequence of the judgment or order to be opened. . . ." To support their argument, they cite this Court to *Harjo v. Johnston*, 1940 OK 152, 104 P.2d 985 and *Choctaw & Chickasaw Missionary Baptist Association v. Matthews*, 1956 OK 307, 304 P.2d 994. In the *Choctaw* case, the Supreme Court held that a party who purchases and takes an assignment of a judgment is not a purchaser in good faith within the meaning and provision of 12 O.S.1941 § 176 (predecessor of § 2004(C)(3)(f)). In the *Harjo* case, the Supreme Court held that one who purchases from a party litigant who purchased the property at a judicial sale is not entitled to the protections of § 176. In this case, however, Intervenors did not take an assignment of the judgment to be opened nor did they purchase the property from a party litigant who purchased the property at a judicial sale.

dian Roll No. 1065, and Lewis Bradley, Creek

■ ¶ 9 Defendants argue, then, that even if the good faith protection afforded by § 2004(C)(3)(f) is available to Intervenors, the trial court's determination that they were purchasers in good faith was clearly against the weight of the evidence. In *Wilkin v. Shell Oil Co.*, 197 F.2d 42 (10th Cir.1951), in determining whether the defendant was a "purchaser in good faith," pursuant to § 176, concluded that the defendant "was not a bona fide purchaser." Because of the *Wilkin* decision and because there appear to be no Oklahoma cases defining a "purchaser in good faith," it would seem that term is synonymous with "bona fide purchaser." In *Limb v. Aldridge*, 1999 OK CIV APP 31, 978 P.2d 365, the Court of Civil Appeals held:

In order to obtain the status of a bona fide purchaser of land, one must (1) pay valuable consideration, (2) act in good faith, (3) not intend to take advantage of third parties, and (4) not have actual or constructive notice of the outstanding rights of others. *Luschen v. Stanton*, 192 Okla. 454, 137 P.2d 567, 569 (1943); *see Eckel v. Adair*, 1984 OK 86 ¶ 7n. 13, 698 P.2d 921, 924. A person presented with sufficient facts to put him on inquiry will be held to have actual notice of whatever a reasonable inquiry might have disclosed. *Jonas v. Dunn*, 132 Okla. 204, 270 P. 46,51.

¶ 10 Defendants argue primarily that Intervenors had actual notice of Defendants' outstanding rights to the subject property, and therefore, Intervenors cannot be good faith purchasers. They point out telephone conversations between Charley and Leneta, one soon after Plaintiff and Intervenors entered into a purchase contract regarding the subject property, and the other during the pendency of the quiet title lawsuit, as support for their argument that Intervenors had actual notice of Defendants' outstanding rights to the property.

¶ 11 However, Charley testified ". . . [o]ne party told me, they had it, and the other party told me, they had it. So, I thought I'd take it to a lawyer, and let him go over this and find out who it belonged to." Additional-

Indian Roll No. 1066."

ly, he testified, "... Both of them [Plaintiff and Leneta] was telling me—she told me she owned it, and you told me, you owned it, and that's why I took it to Bobby Inglish. I didn't know who owned it." At the hearing, when Charley was asked whether he told Mr. Inglish about the members of the Johnson family, he testified, "I just told him I knew them. I didn't say anything about—he didn't ask me. I just took it up there. I took those papers, and Mr. McIntosh [the realtor] and I took them up there. And I thought that's what I paid him for, that he was supposed to go over and that make sure it was foolproof."

¶ 12 Intervenors' reliance on Mr. Inglish is not sufficient to establish good faith, and an arguable absence of legal experience is not relevant to a determination of good faith. Intervenors had actual knowledge of Defendants' claim to the property. *Limb v. Aldridge, supra.* They knew the Johnson family but did not share this information with Mr. Inglish. Moreover, Charley telephoned Leneta twice, and she told him both times there were many heirs, that title was in the process of being cleared, and not to contract with Plaintiff. Charley did not reveal these telephone conversations to Mr. Inglish. One cannot withhold facts from his attorney and claim he was in good faith because of his reliance on his attorney. It is evident from the record, Intervenors have not met the all of the criteria of a bona fide purchaser as set forth in *Limb v. Aldridge, supra.* Therefore, the trial court's determination that Intervenors are "bona fide purchasers of value" is against the weight of the evidence. *Thompson v. Smith,* 1966 OK 214, 420 P.2d 526.

¶ 13 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 14 BUETTNER, P.J., concurs;

¶ 15 GARRETT, J., concurring in result.

GARRETT, J., concurring in result:

¶ 1 I concur in the decision entered today. However, in addition to the matters discussed in the opinion, I would call attention to the fact that Nettie Johnson's heirs apparently own the subject tract of land as tenants in common. With rare exceptions, apparently not applicable here, tenants in common do not possess land adversely to each other. *Tatum v. Jones,* 1971 OK 147, 491 P.2d 283; *Boatman v. Beard,* 1967 OK 33, 426 P.2d 349; *Westheimer v. Neustadt,* 1961 OK 121, 362 P.2d 110; *International Land Co. v. Smith,* 1924 OK 813, 103 Okla. 101, 229 P. 601.

Defendants, the heirs, executors, administrators, trustees, devisees, successors and assigns of J.J. Johnson and Nettie Johnson and three Indian allotees were served by publication.